UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WASHINGTON-ST. TAMMANY ELECTRIC COOPERATIVE, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO. 17-405-JJB-RLB |
| LOUISIANA GENERATING, L.L.C. | |

## ORDER

Before the Court is Defendant's Rule 12(e) Motion for More Definite Statement (R. Doc. 14) filed on September 18, 2017. The motion is opposed. (R. Doc. 22). Defendant has filed a Reply. (R. Doc. 26).

## I. Background

On June 28, 2017, Washington-St. Tammany Electric Cooperative, Inc. ("Washington-St. Tammany") and Claiborne Electric Cooperative, Inc. ("Claiborne") (collectively, "Plaintiffs"), filed this breach of contract action against Louisiana Generating, L.L.C. ("Defendant"). (R. Doc. 1, "Compl."). Plaintiffs allege that they are non-profit electric cooperative corporations who obtain electric power from Defendant. (Compl. ¶¶ 1-4). Plaintiffs seek a finding that Defendant breached certain Power Supply and Service Agreements ("Contracts")[1] by charging them for costs associated with Defendant's remediation of environmental conditions existing at the Big Cajun II power generating plant before the execution of the Contracts, as well as a declaration that Defendant may not assess such costs in the future. (Compl. ¶¶ 4-5). Plaintiffs assert that in light of certain Environmental Law Clauses in the Contracts, Defendant "has exclusive responsibility for the costs of complying with Environmental Laws existing prior to June 24, 2002, and also the costs of

---

[1] The Contracts are attached to the Complaint as Exhibits 1-4. (R. Docs. 1-1, 1-2, 1-3, 1-4).

remediating environmental conditions that existed at the Big Cajun II power generating plant prior to June 24, 2002." (Compl. ¶¶ 7-10).

Plaintiffs assert that Defendant has improperly assessed Plaintiffs with certain remediation costs incurred pursuant to a Consent Decree between Defendant and the Environmental Protection Agency ("EPA") and Louisiana Department of Environmental Quality. (Compl. ¶¶ 11-22). The federal action in which the Consent Decree was entered was brought by the EPA against Defendant on February 18, 2009 "pursuant to Sections 113(b) and 167 of the Clean Air Act ('the Act'), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ('PSD') provisions of the Act, 42 U.S.C. §§ 7470-92; the federally approved Louisiana PSD regulations of the Louisiana State Implementation Plan ("SIP"); Title V of the Act, 42 U.S.C. §§ 7661-7661f, and the federally approved Louisiana Title V program, or any rule or permit issued thereunder." *EPA v. Louisiana Generating*, Civil Action No. 09-100-JJB-RLB, ECF No. 1 at 1 (M.D. La. Feb. 18, 2009).[2] On March 5, 2013, the Court entered a Consent Decree providing, in pertinent part, the following:

> WHEREAS, the Settling Defendant affirms that a portion of the emissions technology, including related to PM emissions and refueling, under this consent decree, will allow it to comply with the Mercury [and] Air Toxics Rule, a change in environmental law promulgated after the filing of the complaint.

*Louisiana Generating*, ECF No. 427 at 4.[3] Plaintiffs allege that in light of the foregoing whereas clause, Defendant has wrongly characterized remediation costs of past excess emissions of nitrous oxides ("NOx"), sulfur dioxide ("SO$_2$"), and particulate matter ("PM") as related to the 2011 Mercury and Air Toxics Standards ("MATS") Rule, which was proposed by the EPA on May 3,

---
[2] The EPA Complaint is attached to the Complaint as Exhibit 5. (R. Doc. 1-5).
[3] The Consent Decree is attached to the Complaint as Exhibit 6. (R. Doc. 1-6).

2

2011, and became effective on April 16, 2012, as opposed to environmental laws in effect prior to the execution of the Contracts. (*see* Compl. ¶¶ 21-31).[4]

Plaintiffs specifically contend that the following five categories of costs have been wrongly assessed by Defendant: (i) the boiler conversion of Unit 2 at Defendant's Big Cajun II power plan from coal to natural gas (including natural gas pipeline costs); (ii) the installation of PM continuous emission monitoring systems ("CEMS") on Units 1 and 3; (iii) "certain costs" associated with the ash handling collection systems; (iv) "certain costs" of electrostatic precipitator ("ESP") upgrades; and (v) "certain costs" that Defendant has identified as MATS chemical costs. (Compl. ¶¶ 27, 30, 34, 37).

Plaintiffs assert that Defendant has wrongly assessed Plaintiffs with approximately $38.1 million between 2016 and 2025 in remediation costs. (Compl. ¶ 28). Plaintiffs allege that "[o]f the approximately $38.1 million in costs that [they] dispute, approximately $10.4 million are capital costs, approximately $16.2 million are interest expenses, and approximately $11.5 million are operations and maintenance expenses." (Compl. ¶ 28). Plaintiffs challenge Defendant's position that it "has appropriately allocated chemical costs between the Activated Carbon Injection system (a mercury control) and the dry sorbent injection ("DSI") and SNCR [Selective Non-Catalytic Reduction system] required by the Consent Decree." (Compl. ¶ 29). Plaintiffs assert that they have "already suffered significant harm, paying more than $7.6 million in unjustified charges from July 2015 through May 2017." (Compl. ¶ 31).

On September 18, 2017, Defendant filed the instant Motion for a More Definite Statement under Fed. R. Civ. P. 12(e). (R. Doc. 14). Defendant contends that the Complaint "fails to provide any information regarding the disputed ash handling collection systems costs, little to no

---

[4] *See* National Emission Standards for Hazardous Air Pollutants From Coal- and Oil-Fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units, 77 Fed. Reg. 9304 (Feb 16, 2012).

information regarding the disputed ESP costs, and little information regarding the disputed chemical costs." (R. Doc. 14 at 3). Defendant argues that because Plaintiffs have not specifically identified the "certain costs" related to these three categories, it cannot prepare a response to the allegations regarding those costs. (R. Doc. 14-1 at 5-7).

In opposition, Plaintiffs contend that they have satisfied the pleading requirements of Rule 8(a)(2), and that the specificity sought by Defendant is more appropriately addressed through discovery. (R. Doc. 22). Plaintiffs assert that they have specifically pled that the "certain costs" alleged in the Complaint are those costs associated with Defendant's "implementation of its remediation obligations in the Consent Decree or other Environmental Laws enacted before 2002, and not the MATS Rule." (R. Doc. 22 at 4; Compl. ¶ 30). In short, Plaintiffs assert that the only challenged costs are those that Defendant has mischaracterized as costs incurred to comply with the MATS Rule, and that discovery is required to identify which costs have been mischaracterized. (R. Doc. 22 at 4-5). Plaintiffs further assert that in November 2016 (prior to commencing the instant action), they attempted to obtain more information regarding Defendant's cost calculations and that Defendant responded that the information sought is confidential. (R. Doc. 22 at 5-6).

In reply, Defendant represents that it attempted to provide Plaintiffs with information about the allocation of costs towards MATS Rule compliance as early as January of 2016, but Plaintiffs refused to sign a confidentiality agreement to obtain the information sought until they filed the instant action. (R. Doc. 26 at 2-3, 4-6). Defendant again asserts that Plaintiffs have not identified the specific costs at issue regarding the ash handling collection systems, ESP upgrades, and chemical costs. (R. Doc. 26 at 3-5).

**II.     Law and Analysis**

Rule 12(e) provides that "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot

4

reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Beanel v. Freeport–McCoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)"). The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A Rule 12(e) motion may be appropriate "if a pleading fails to specify the allegations in a manner that provides sufficient notice." *Id*. at 514.

When evaluating a motion for a more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8. *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006); *see* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Given the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored. *Adams v. Southland Trace, LLC*, No. 07-941, 2012 WL 12986191, at *5 (M.D. La. Fed. 29, 2012). The trial judge is given considerable discretion in deciding whether to grant a Rule 12(e) motion. *Id.* Finally, a Rule 12(e) motion is not a substitute for the discovery process. *Ford v. Cain*, No. 15-136, 2016 WL 447617, at *2 (M.D. La. Feb. 4, 2016).

Having reviewed the Complaint, and having considered the arguments of the parties, the Court concludes that the Complaint is not "so vague or ambiguous" that Defendant "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

In pertinent part, Plaintiffs specifically contend in the Complaint that "certain costs" associated with the ash handling collection systems, ESP upgrades, and other chemical costs have been wrongly characterized by Defendant as costs incurred in light of the MATS Rule. The Complaint further alleges that such costs were attributable to the Consent Decree or other

environmental laws and specifically identifies the categories of charges that are improperly characterized.

Defendant does not dispute that it has in its possession, custody, or control information that bears upon whether and to what extent such costs have been properly allocated as pertaining to the MATS Rule. While it appears that Defendant may have been willing to provide some or all of this information prior to the filing of the instant lawsuit after entry of a confidentiality agreement, that fact does not render Plaintiffs' allegations deficient.

Indeed, Defendant asserts in its Opposition that it "emphatically denies it has improperly characterized and charged any costs" because all of the charges it has assessed to the Plaintiffs under the Contracts are for compliance with the MATS Rule as opposed to environmental laws adopted prior to the execution of the Contracts. (R. Doc. 14-1 at 5). Considering that unequivocal denial, it is unclear how Defendant cannot reasonably prepare a response to Plaintiffs' allegations, which assert that the converse is true regarding "certain costs" Defendant has assessed related to the ash handling collection systems, ESP upgrades, and other chemical costs. *See* Fed. R. Civ. P. 8(b)(1) ("In responding to a pleading, a party must: state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it by an opposing party.").

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for a More Definite Statement (R. Doc. 14) is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 2, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**