# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WASHINGTON-ST. TAMMANY ELECTRIC COOPERATIVE, INC., ET AL.**

**VERSUS**

**LOUISIANA GENERATING, L.L.C.**

CIVIL ACTION

NO. 17-405-JWD-RLB

## ORDER

Before the Court is Defendants' Motion to Extend Deadline for Completion of Fact Witness Depositions for Limited Purposes, Consented In Part and Disputed In Part. (R. Doc. 79). The motion is opposed in part. (R. Doc. 92).

Also before the Court is Defendant's First Motion to Compel. (R. Doc. 63). The motion is opposed. (R. Doc. 87).

Also before the Court is Defendant's Second Motion to Compel. (R. Doc. 85). The motion is opposed. (R. Doc. 102).

Also before the Court is Plaintiff's Motion for a Protective Order Concerning Certain Rule 30(b)(6) Deposition Topics. (R. Doc. 52) The motion is opposed. (R. Doc. 62).

The Court considers the foregoing interrelated motions together.

## I.    Background

On June 28, 2017, Washington-St. Tammany Electric Cooperative, Inc. ("WST") and Claiborne Electric Cooperative, Inc. ("Claiborne") (collectively, "Plaintiffs" or the "Customer Cooperatives"), filed this breach of contract action against Louisiana Generating, L.L.C. ("Defendant" or "LaGen"). (R. Doc. 1, "Compl."). The Customer Cooperatives allege that they are non-profit electric cooperative corporations who obtain electric power from LaGen. (Compl.

¶¶ 1-4).  The Customer Cooperatives seek a finding that LaGen breached certain Power Supply and Service Agreements ("Contracts")[1] by charging them for costs associated with LaGen's remediation of environmental conditions existing at the Big Cajun II power generating plant before the execution of the Contracts, as well as a declaration that LaGen may not assess such costs in the future. (Compl. ¶¶ 4-5).  The Customer Cooperatives assert that in light of certain Environmental Law Clauses in the Contracts, LaGen "has exclusive responsibility for the costs of complying with Environmental Laws existing prior to June 24, 2002, and also the costs of remediating environmental conditions that existed at the Big Cajun II power generating plant prior to June 24, 2002." (Compl. ¶¶ 7-10).

The Customer Cooperatives assert that LaGen has improperly assessed them with certain remediation costs incurred pursuant to a Consent Decree between LaGen and the Environmental Protection Agency ("EPA") and Louisiana Department of Environmental Quality ("LDEQ"). (Compl. ¶¶ 11-22).  The federal action in which the Consent Decree was entered was brought by the EPA against LaGen on February 18, 2009 "pursuant to Sections 113(b) and 167 of the Clean Air Act ('the Act'), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ('PSD') provisions of the Act, 42 U.S.C. §§ 7470-92; the federally approved Louisiana PSD regulations of the Louisiana State Implementation Plan ('SIP'); Title V of the Act, 42 U.S.C. §§ 7661-7661f, and the federally approved Louisiana Title V program, or any rule or permit issued thereunder." *EPA v. Louisiana Generating*, Civil Action No. 09-100-JJB-RLB, ECF No. 1 at 1 (M.D. La. Feb. 18, 2009).[2]  On March 5, 2013, the Court entered a Consent Decree providing, in pertinent part, the following:

---

[1] The Contracts are attached to the Complaint as Exhibits 1-4. (R. Docs. 1-1, 1-2, 1-3, 1-4).
[2] The EPA Complaint is attached to the Complaint as Exhibit 5. (R. Doc. 1-5).

WHEREAS, the Settling Defendant affirms that a portion of the emissions technology, including related to PM emissions and refueling, under this consent decree, will allow it to comply with the Mercury [and] Air Toxics Rule, a change in environmental law promulgated after the filing of the complaint.

*Louisiana Generating*, ECF No. 427 at 4.[3] The Customer Cooperatives allege that "on the basis of this self-serving statement," LaGen has wrongly characterized remediation costs of past excess emissions of nitrous oxides ("NOx"), sulfur dioxide ("SO$_2$"), and particulate matter ("PM") as related to the 2011 Mercury and Air Toxics Standards ("MATS") Rule, as opposed to environmental laws in effect prior to the execution of the Contracts. (*See* Compl. ¶¶ 21-31).[4]

The Customer Cooperatives specifically contend that the following five categories of costs have been wrongly assessed by LaGen: (i) the boiler conversion of Unit 2 at LaGen's Big Cajun II power plan from coal to natural gas (including natural gas pipeline costs); (ii) the installation of PM continuous emission monitoring systems ("CEMS") on Units 1 and 3; (iii) "certain costs" associated with the ash handling collection systems; (iv) "certain costs" of electrostatic precipitator ("ESP") upgrades; and (v) "certain costs" that LaGen has identified as MATS chemical costs. (Compl. ¶¶ 27, 30, 34, 37).

The Customer Cooperatives assert that LaGen has wrongly assessed them with approximately $38.1 million between 2016 and 2025 in remediation costs. (Compl. ¶ 28). The Customer Cooperatives allege that "[o]f the approximately $38.1 million in costs that [they] dispute, approximately $10.4 million are capital costs, approximately $16.2 million are interest expenses, and approximately $11.5 million are operations and maintenance expenses." (Compl. ¶ 28). The Customer Cooperatives challenge LaGen's position that it "has appropriately allocated

---

[3] The Consent Decree is attached to the Complaint as Exhibit 6. (R. Doc. 1-6).
[4] *See* National Emission Standards for Hazardous Air Pollutants From Coal- and Oil-Fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units, 77 Fed. Reg. 9304 (Feb 16, 2012).

chemical costs between the Activated Carbon Injection system (a mercury control) and the dry sorbent injection ('DSI') and SNCR [Selective Non-Catalytic Reduction system] required by the Consent Decree." (Compl. ¶ 29). The Customer Cooperatives assert that they have "already suffered significant harm, paying more than $7.6 million in unjustified charges from July 2015 through May 2017." (Compl. ¶ 31).

## II.  Law and Analysis

### A.  LaGen's Motion to Extend Deadline for Completion of Fact Witness Depositions for Limited Purposes (R. Doc. 79)

#### 1.  Legal Standard

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In determining whether the movant has established "good cause" for an extension of deadlines, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to cure such prejudice. *See Leza v. City of Laredo*, 496 Fed. App'x 375, 377 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

#### 2.  Analysis

LaGen seeks a limited extension of the deadline to conduct fact witness depositions, which expired on November 2, 2018, for the purpose of conducting or continuing certain depositions. LaGen first seeks an order providing that the Rule 30(b)(6) depositions of WST and

Claiborne, to the extent allowed,[5] as well as any other depositions permitted by the Court in connection with timely filed discovery motions, take place within fifteen days of the Court's ruling on the underlying motions. (R. Doc. 79 at 1-2).[6] The Customer Cooperatives consent to this portion of the motion. (R. Doc. 92 at 1). The Court finds good cause to grant the instant motion with respect to this relief.

LaGen also seeks an order providing for the continuation of the deposition of Mark Brown (Claiborne's General Manager) taken on October 18, 2018, the deposition of Charles Hill (WST's General Manager) taken on October 26, 2018, and the deposition of Walt Sylvest (WST's Manager of Finance and Administration) taken on October 26, 2018. (R. Doc. 79 at 2-3). LaGen seeks the continuation of these depositions in light of document productions made on October 11, 2018, October 16, 2018, and October 23, 2018, as well as the identification of certain documents at the depositions of Messrs. Hill and Sylvest that were not previously produced. (R. Doc. 79-1 at 4-10).[7]

The Customer Cooperatives argue that the instant motion is unnecessary with respect to the continuation of the deposition of Mr. Brown because counsel for the parties agreed at the conclusion of his deposition to reopen it for the purposes of addressing documents produced during the week of his deposition. (R. Doc. 92 at 1-3). With respect to the depositions of Messrs. Hill and Sylvest, the Customer Cooperatives argue that the October 11, 2018 production was delayed in light of LaGen's own delay in agreeing upon ESI search terms. (R. Doc. 92 at 3; *see* R. Doc. 87 at 1-3). The Customer Cooperatives further note that LaGen sought to move the

---

[5] These depositions are the subject of the Customer Cooperatives' Motion for Protective Order. (R. Doc. 52).

[6] LaGen also seeks an extension to take the deposition of John Klumpyan. That issue is moot as LaGen withdrew the subpoena seeking Mr. Klumpyan's deposition. (R. Doc. 88).

[7] LaGen also seeks this relief, as well as the production of previously unidentified documents, through its Second Motion to Compel. (R. Doc. 85-2 at 12-18). The Court considers that motion below.

depositions forward one day after receipt of the October 11, 2018 production, and that the October 23, 2018 production "was a small, supplemental production containing only 220 pages" pertaining to regulatory proceedings before the Louisiana Public Service Commission ("LPSC") that LaGen may already have had in its possession. (R. Doc. 92 at 3-5). Finally, the Customer Cooperatives assert that LaGen did not identify all documents that were "discovered" during the foregoing depositions, and otherwise assert that the specific documents addressed in LaGen's motion are outside the scope of discovery. (R. Doc. 92 at 5-7).

The Court finds good cause to extend the fact witness deposition deadline for the purpose of continuing the October 18, 2018 deposition of Mr. Brown in light of the parties' agreement on the record to reopen the deposition to address documents produced during the week of his deposition. The Court will limit the continued deposition to 2.5 hours. The subject matter of the deposition is limited to the documents produced on October 11, 2018, October 16, 2018, and October 23, 2018.

The Court does not, however, find good cause to extend the fact witness deposition deadline for the purposes of continuing the October 26, 2018 depositions of Messrs. Hill and Sylvest. All of the document productions at issue were made prior to these depositions, and the bulk of the documents appear to have been produced more than two weeks prior to these depositions. The record does not indicate that LaGen sought a continuation of these deposition dates in light of the document productions. LaGen has not otherwise demonstrated how it did not have sufficient time to review the produced documents prior to the depositions.

The Court will also not reopen these depositions in light of the identification of documents during the depositions that were not previously produced. If these documents are responsive to previous written discovery requests, then they are properly sought through

LaGen's motions to compel (R. Docs. 63, 85).  In ruling upon LaGen's Second Motion to Compel, the Court will consider whether LaGen should be allowed to conduct additional discovery with respect to the previously unidentified documents. (*See* R. Doc. 85-2 at 12-18).

### B.    Motions to Compel and Motion for Protective Order

#### 1.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of

fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure.

### 2.    LaGen's First Motion to Compel (R. Doc. 63)

LaGen seeks an order requiring the Customer Cooperatives to produce documents responsive to Request for Production Nos. 1-5, 7, 11, 14, 16, 17, 20, [21], 25, and 26, to which the Customer Cooperatives responded on February 20, 2018.[8] LaGen represents that the parties negotiated an Electronically Stored Information Protocol and Protective Order ("ESI Agreement") that was fully executed on June 21, 2018. (R. Doc 63-1 at 2).[9] While LaGen asserts that the parties "engaged in extensive negotiations regarding the ESI Agreement", it does not identify whether any specific custodians or search terms were identified and agreed upon pursuant to the ESI Agreement. (R. Doc. 63-1 at 3). LaGen's arguments are based on assertions that the Customer Cooperatives have not produced any responsive documents for specific requests or otherwise have withheld documents on the basis that they are publicly available or belong to third parties. (R. Doc. 63-1 at 6-11).

In opposition, the Customer Cooperatives assert that they have produced more than 20,000 pages of documents, including ESI collected pursuant to "agreed-upon search terms" and "agreed-upon custodians" following the parties' September 18, 2018 discovery conference. (R.

---

[8] There is no dispute that these written responses were timely.

[9] The Customer Cooperatives assert that the ESI Agreement "sets forth a seven-step process: (1) Identification of Custodians, (2) Identification of Search Terms, (3) Identification of Search Protocols, (4) Application of Agreed Search Terms, (5) Resolution of Disputed Terms, (6) Additional Terms for Good cause, and (7) other continuing obligations." (R. Doc. 87 at 2). It appears that neither party has produced the actual ESI Agreement for review by the Court.

Doc. 87 at 1-3).  The Customer Cooperatives represent that the parties agreed upon the search terms, custodians, and dates ranges for Request for Production Nos. 1, 4, 5, 7, 11, 14, 16, 17, and 26. (R. Doc. 87 at 4-7).   These search terms, custodians, and date ranges are found in a spreadsheet attached to the Customer Cooperative's Opposition as Exhibit 1. (R. Doc. 87-1) ("the ESI Spreadsheet").  LaGen has not sought leave to file any additional argument or otherwise challenged the Customer Cooperative's assertion that the ESI Spreadsheet consists of agreed-upon search terms and custodians.

The Customer Cooperatives raise separate arguments with respect to Request for Production Nos. 2, 3, 20, 21, 25, which are not subject to the ESI Agreement or ESI Spreadsheet. (R. Doc. 87 at 4-7).

### i.  Request for Production Nos. 4, 11, and 21[10]

LaGen asserts that the Customer Cooperatives have failed to produce specific documents responsive to Request for Production Nos. 4, 11, and 21, which the Customer Cooperatives only objected to on the basis of privilege. (R. Doc. 63-1 at 6-7).

The Customer Cooperatives represent that it conducted the proper agreed-upon ESI search protocols with respect to Request for Production Nos. 4 and 11. (R. Doc. 87 at 5).  Given this representation, the Court will not require the Customer Cooperatives to produce any additional ESI responsive to these requests based upon the arguments raised in the instant motion.  The Court will further address Request for Production No. 4 below in the context of

---

[10] LaGen does not mention Request for Production No. 21 in its actual motion, but raises arguments in its supporting memorandum with respect to this request.  Accordingly, the Court will proceed to the merits with respect to this request. LaGen also mentions Request for Production No. 13 in its supporting memorandum, but raises no substantive arguments with respect to this request.  The Court assumes this was a typographical error in the supporting memorandum.

resolving LaGen's Second Motion to Compel, which raises somewhat more detailed arguments with respect to this document request.

While the Customer Cooperatives assert that they have satisfied their duty to provide ESI in light of the parties' agreements, they have not represented whether they have searched for and produced hard copy documents responsive to Request for Production Nos. 4 and 11. The Customer Cooperatives have raised no objections to such a production. Unless the parties have entered into a separate agreement regarding the search and production of hard copy documents, the Customer Cooperatives must produce all non-privileged hard copy documents in their possession, custody, or control responsive to Request for Production Nos. 4 and 11, or otherwise certify that no such documents have been located after a reasonable search.

Request for Production No. 21 seeks the production of "all documents and information" posted to the Customer Cooperatives' social media sites from 2010 to the present. (R. Doc. 63-2 at 69). The Customer Cooperatives responded by stating that their social media pages are publicly available and by providing the relevant internet addresses for their Facebook and Twitter accounts, as well as their websites. (R. Doc. 63-2 at 69-70). The Customer Cooperatives raised no specific objection to the instant discovery request.

LaGen asserts that this response is insufficient because "[i]t is believed relevant information related to the dealings between the parties was posted to the Plaintiffs' sites at some point during the relevant time period, but such information is not readily accessible at this time." (R. Doc. 63-1 at 6). The Customer Cooperatives argue that relief with respect to this request for production should be denied because LaGen has not elicited any testimony in support of this belief. (R. Doc. 87 at 7-8).

Rule 34 requires the production of documents or ESI responsive to document requests that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The Customer Cooperatives did not object to the instant request for production on the basis that it seeks information outside of the scope of discovery, or that the production of responsive information would subject it to undue burden or expense. "[S]ocial media is generally discoverable." *Scott v. United States Postal Service*, No. 15-712, 2016 WL 7440468, at * 4 (M.D. La. Dec. 27, 2016) (citations omitted). Furthermore, that the responsive information is publicly available does not prevent its discovery. *See Martino v. Kiewit N.M. Corp.*, 600 Fed. App'x 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses."); *Simpson v. Hexion Specialty Chemicals*, No. 06-798, 2007 WL 9710857, at *6 (M.D. La. Sept. 19, 2007) ("[T]o the extent plaintiffs have . . . 'publicly available' documents in their possession, custody or control and they are relying upon them in support of their claims in this litigation, they have an obligation to produce them to the defendants."); *see also Phillips v. Hanover Ins. Co.*, No. 14-871, 2015 WL 1781873, at *2 n.1 (W.D. Okla. Apr. 20, 2015) ("Courts consistently hold that parties have an obligation to produce even publicly available information.") (collecting cases).

Given the foregoing, the Court will require the Customer Cooperatives to supplement their response to Request for Production No. 21 by producing the information sought from the identified social media sites Facebook and Twitter. Furthermore, the Customer Cooperatives must also inform LaGen whether any relevant information from 2010 to the present was posted and then subsequently removed or restricted from public view. As it is unclear whether LaGen is solely seeking non-publicly available information on the social media websites, the parties may

agree that the Customer Cooperatives need not produce publicly available information, and may otherwise agree to limit the scope of information to be produced.

### ii.      Request for Production Nos. 1, 5, 7, 14, 16, 17, 20, and 26

LaGen does not raise any specific arguments with respect to Request for Production Nos. 1, 5, 7, 14, 16, 17, 20, and 26, other than including these documents in its statement that the Customer Cooperatives "have refused to produce relevant documents and information exchanged with its consultants, contractors or agents, including but not limited to consultant Roger Comeaux, because they are 'non-employee third parties.'" (R. Doc. 63-1 at 9).[11]  The Customer Cooperatives' objections to these discovey requests are based on relevance and privilege. (R. Doc. 63-2 at 60-61, 65-67, and 72).

The Customer Cooperatives represent that it conducted the agreed-upon ESI search protocols, including agreed-upon custodians, with respect to Request for Production Nos. 1, 5, 7, 14, 16, 17, and 26. (R. Doc. 87 at 5-7).  The Customer Cooperatives further note that they "sought out information not in their files form the attorney that represented Plaintiffs in proceedings before the LPSC in 2011 to 2012, and produced the relevant materials he was able to locate in his files" in response to Request for Production No. 26. (R. Doc. 87 at 7).  Given these representations, the Court will not require the Customer Cooperatives to produce any additional ESI responsive to these requests in light of the arguments raised in the instant motion. The Court will, however, require the Customer Cooperatives to produce all non-privileged hard copy documents in their possession, custody, or control responsive to Request for Production Nos. 1, 5, 7, 14, 16, 17, and 26, or otherwise certify that no such documents have been located after a reasonable search.

---

[11] LaGen also raises this argument with respect to Request for Production Nos. 2, 3, and 25. (R. Doc. 63-1 at 9).

With respect to Request for Production No. 20, which seeks communications between the Customer Cooperatives and their "employees, representatives, agents, consultants, experts or attorneys" regarding the Contracts, MATS compliance, or costs for compliance with MATS (R. Doc. 62-2 at 68), the Customer Cooperatives maintain that they have produced 22 non-privileged documents responsive to this request. (R. Doc. 87 at 6). It is unclear whether the production consists of ESI or hard copy documents. Given the ambiguities with respect to this request for production, the Court will require the Customer Cooperatives to certify that they have produced all non-privileged ESI and hard copy documents in their possession, custody, or control responsive to Request for Production No. 20.

The remaining issue is whether the Customer Cooperatives must collect and produce documents "physically in the possession of non-employee consultants, contractors, or agents." (R. Doc. 63-1 at 9). The Customer Cooperatives asserted, prior to the filing of the instant motion, that they "have no obligation to seek records from non-employee third part[ies] beyond the information existing in [the Customer Cooperatives'] files." (R. Doc. 63-2 at 81).

"Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted). The rule "has been construed to include materials in possession, custody or control of the party's agent, such as an attorney." *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018). Materials provided by the party to its hired consultants may be within that party's possession, custody, or control. *Dillard Univ. v. Lexington Ins. Co.*, No. 06-4138, 2008 WL 11350306, at *1 (E.D. La. Mar. 27, 2008). "The burden is on the party seeking discovery to make a showing that the other party has control over the material sought. When determining the sufficiency of control of

material for purposes of Rule 34, the nature of the relationship between the party and the non-party is the key." *Estate*, 2004 WL 737463, at *10.

Based on the foregoing standards, the Customer Cooperatives have a duty to collect and produce responsive information in their agents' possession, custody, or control.[12] LaGen, however, only identifies an individual named Roger Comeaux as a consultant from whom the Customer Cooperatives must collect and produce documents. LaGen has made no effort to the establish, and the Court makes no finding, regarding whether Mr. Comeaux is an agent for the purposes of Rule 34. Given the broad and undetailed sweep of LaGen's arguments with respect to third-party documents, the Court will only order the Customer Cooperatives to supplement their responses to LaGen's Requests for Production to the extent they withheld documents in possession, custody, or control of their agents.

### iii.     Request for Production Nos. 2, 3, and 25

Request for Production Nos. 2, 3, and 25 collectively seek the production of filings or submissions made to the LPSC regarding the Contracts, LaGen's plans or costs for MATS compliance, and any filings or presentations made or joined by the Customer Cooperatives from any LPSC meetings and dockets. (R. Doc. 63-2 at 58-59, 71). The Customer Cooperatives objected to these requests on the basis that responding to them would require the Customer Cooperatives to search and review public records equally available to LaGen, and accordingly subject the Customer Cooperatives to undue burden. (R. Doc. 63-2 at 58-59, 71-72).

LaGen seeks an order overruling the Customer Cooperatives' objections, and ordering them to produce responsive documents in their possession, custody, and control regardless of

---

[12] Of course, to the extent the parties agreed upon specific custodians and methods for gathering responsive information with respect to certain requests for production, the parties have no duty to collect and produce information outside of any such agreements.

whether they constitute "public records" available on the LPSC's website. (R. Doc. 63-1 at 7).

Furthermore, LaGen argues that certain documents exchanged between the LPSC and the

Customer Cooperatives as part of the regulatory proceedings are redacted in the public record,

and the Customer Cooperatives "have access to all of these un-redacted versions and non-public

documents." (R. Doc. 63-1 at 8-9).

In opposition, the Customer Cooperatives argue that they should not be required to

produce the documents sought that are publicly available, and to the extent certain confidential

materials are not publicly available, documents produced by LaGen indicate that it "received

copies of these confidential materials at or near the time of the filing." (R. Doc. 87 at 4-5, 6-7).

The Customer Cooperatives also represent that they "sought out information not in their files

from the attorney that represented [the Customer Cooperatives] in the proceedings before the

LPSC in 2011 to 2012 and produced the relevant materials he was able to locate in his files" on

October 18, 2018 and October 23, 2018. (R. Doc. 87 at 4).

As discussed above, information in a party's possession, custody, or control is generally

discoverable even if it is publicly available or already in the requesting party's possession. *See*

Fed. R. Civ. P. 34(a)(1); *Martino*, 600 Fed. App'x at 911.  The Federal Rules do not, however,

require the Customer Cooperatives to go to the LPSC's website and produce publicly available

information that is not in their possession, custody, or control.  It is unclear to what extent the

Customer Cooperatives actually have possession, custody, or control of the responsive

information sought.  For example, the Customer Cooperatives assert that they obtained

responsive confidential information from their former attorney that was "not in their files" and

produced that information to LaGen. (R. Doc. 87 at 4).  Furthermore, the Customer

Cooperative's response to these requests suggests that they would have to "search and review

15

public records" to make the required productions, presumably because those documents are not in their possession, custody, or control.

Assuming that responsive information is in the possession, custody, or control of the Customer Cooperatives, the Court finds that the public availability of any such documents does not create an "undue burden" on the Customer Cooperatives. The Customer Cooperatives have not otherwise demonstrated that the information sought is outside of the scope of discovery or that the production of such information would subject them to undue burden or expense. Indeed, if the information sought is not in the Customer Cooperatives' possession, custody, or control (as suggested by their responses), then the Customer Cooperatives face no burden or expense at all, as they have no duty to collect and produce the information.

Based on the foregoing, the Court will require the Customer Cooperatives to produce any non-privileged information responsive to Request for Production Nos. 2, 3, and 25 in their possession, custody, or control. To the extent applicable, the Customer Cooperatives may, in addition to or in lieu of the foregoing, inform LaGen that they have no responsive documents in their possession, custody, or control, or that all documents in their possession, custody, or control have previously been produced.

### 3.    LaGen's Second Motion to Compel (R. Doc. 85)

LaGen seeks an order requiring the Customer Cooperatives (i) to provide a privilege log in connection with its First Set of Interrogatories and Requests for Production of Documents; (ii) to provide complete and direct responses to Interrogatory Nos. 12, 16-21, and 23 served on WST, and Interrogatory Nos. 10, 14-19, and 20 served on Claiborne (which were all objected to on the basis that they are "contention" interrogatories); (iii) to provide complete and direct responses to Interrogatory No. 24 served on WST, and Interrogatory No. 22 served on Claiborne

(which were objected to on the basis that they sought inadmissible parol evidence); and (iv) to run necessary search terms and produce documents responsive to Request for Production Nos. 1 and 4. (R. Doc. 85; R. Doc. 85-1; R. Doc. 85-1 at 1-12).[13]

### i. The Privilege Log

The Customer Cooperatives argue that the issue regarding their failure to produce a timely privilege log is moot because they produced a privilege log after the filing of the instant motion, and after the deadline to file discovery motions and to take fact witness depositions, on November 16, 2018. (R. Doc. 102 at 3-4). The Customer Cooperatives did not attach a copy of this privilege log to their opposition. LaGen has not sought leave to address the production of the privilege log or otherwise file any motions with respect to the privilege log.

The Customer Cooperatives had a duty to produce a timely privilege log in conformance with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure and Local Rule 26(c). Accordingly, the Court will grant the motion with respect to ordering the production of a privilege log. The Customer Cooperatives represent, however, that "LaGen never inquired of counsel for the Customer Cooperatives about the status of the Customer Cooperatives' privilege log" prior to the filing of its motion. (R. Doc. 102 at 3). Given the record, the Court will not order any sanctions with respect to this late submission of a privilege log. Furthermore, given that LaGen has had ample opportunity to review the contents of the privilege log, the Court will not entertain any motions pertaining to the privilege log absent a specific showing of good cause for delay in filing any such motion.

---

[13] As discussed above, LaGen also seeks the continuation of the depositions of Messrs. Brown, Hill, and Sylvest, as well as the production of documents identified during those depositions, in its supporting memorandum. (R. Doc. 85-2 at 12-18). The Customer Cooperatives oppose this relief. (R. Doc. 102 at 9-15). The Court has considered these arguments, and denies any additional relief with respect to these depositions and documents unless otherwise provided in this Order.

## ii.    The Contention Interrogatories

The Customer Cooperatives argue that LaGen's motion is moot with respect to Interrogatory Nos. 12, 16-21, and 23 served on WST, and Interrogatory Nos. 10, 14-19, and 20 served on Claiborne, because they provided supplemental responses to those interrogatories on November 16, 2018. (R. Doc. 102 at 4-5). The Customer Cooperatives originally objected to responding to these interrogatories prior to the completion of discovery and the exchange of expert reports on the basis that they constitute "contention" interrogatories. (R. Doc. 85-1 at 2-7).

Contention interrogatories are specifically permitted by Rule 33, which provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Accordingly, an interrogatory may reasonably ask for the material or principal facts which support a contention, including those asserted in affirmative defenses. As with any interrogatory, however, a contention interrogatory may be overly broad where it seeks "each and every" single fact upon which a party bases its case. *See*, *e.g.*, *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). Courts have "tended toward a middle ground, requiring parties to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all of the evidence that will be offered." *Linde v. Arab Bank, PLC*, No. 04-2799, 2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) (citing cases).

Rule 33 further provides that "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). By or soon after the close of discovery, a "defendant should be able to *generally explain* the factual basis for each of the denials and affirmative defenses pled in its . . . answer." *Barkley v. Life. Ins. Co. of North America*, No. 07-1498, 2008 WL 450138 (N.D.

Tex. Feb. 19, 2008) (requiring answers to interrogatories seeking "the basis for each affirmative defense expressed in Defendant's Original Answer" after the close of discovery, but prior to the deadline to file dispositive motions).

The Customer Cooperatives' objection to the instant interrogatories was based on the timing of their responses. The Customer Cooperatives assert that they provided supplemental responses responding to these interrogatories on November 16, 2018. LaGen has not filed any additional motion with respect to these supplemental responses. Accordingly, the Court will deny LaGen's motion with respect to the instant interrogatories as moot.

### iii.     The "Parol Evidence" Interrogatories

Interrogatory No. 24 served on WST, and Interrogatory No. 22 seek the reasons that the Customer Cooperatives entered into the Contracts, including any reasons related to LaGen's MATS compliance strategy. (R. Doc. 85-1 at 5). The Customer Cooperatives objected to these interrogatories as "not reasonably calculated to lead to the discovery of admissible evidence" because they seek parol evidence of the Customer Cooperatives' intent when entering into the Contracts, which is only relevant if the contracts are ambiguous. (R. Doc. 85-1 at 5-6).

The Customer Cooperatives argue that the motion is moot with respect to these interrogatories because they produced updated responses on November 16, 2018. (R. Doc. 102 at 5-6).

This is a breach of contract action, which necessarily involves contract interpretation. The Court finds the information sought to be within the scope of discovery. Accordingly, even though the Customer Cooperatives appear to have provided supplemental responses to these interrogatories, the Court will grant LaGen's motion with respect to these interrogatories.

### iv.      Request for Production Nos. 1 and 4

While LaGen seeks relief with respect to Request for Production No. 1 in their motion, it does not raise any argument with respect to this document request in its memorandum in support. The Customer Cooperatives represent that they have "produced 442 documents tagged as responsive to Request for Production No. 1." (R. Doc. 102 at 6). The Court finds no basis for requiring the Customer Cooperatives to respond further with respect to this request, with the exception of any hard document production as ordered above.

Request for Production No. 4 seeks the production of documents or communications "related to bids or offers for the provision of electric services" received by the Customer Cooperatives prior to the 2011/2012 amendment of the Contracts. (R. Doc. 85-1 at 6-7). As discussed above, the Court will not order the Customer Cooperatives to produce any additional ESI with respect to the representations made in support of LaGen's First Motion to Compel.

In support of the instant motion, however, LaGen represents that the Customer Cooperatives originally represented that there were "no other bidders" involved in the bidding process that WST engaged in during the contract extension negotiation and approval processes. (R. Doc. 85-2 at 10). LaGen then states that it determined that this assertion was false by reviewing the public records of the LPSC, and that the Customer Cooperatives "never responded" to its request that "searches be run under the names of all bidders." (R. Doc. 85-2 at 10).[14] In fact, on August 10, 2018, the Customer Cooperatives specifically stated that they would "name any additional bidders" that they were "able to identify by August 17, 2018." (R.

---

[14] In support of this assertion, LaGen attached 52 pages of e-mail and letter correspondence with "relevant portions highlighted for the Court's convenience." (R. Doc. 85-2 at 10 n.13; *see* R. Doc. 85-8). Among other things, the attached correspondence contains negotiations regarding the applicable search criteria and custodians to be applied with respect to Request for Production No. 4. Some of this correspondence is discussed in the Customer Cooperatives' opposition. (R. Doc. 87 at 2-3). The Court has not located, and the parties have not directed the Court to, any written agreement with respect to the applicable search criteria and custodians to be applied with respect to Request for Production No. 4 (other than the terms of the ESI Spreadsheet).

Doc. 85-8 at 35).  The Customer Cooperatives represent that LaGen did not respond to the foregoing correspondence, but otherwise agreed to the terms of the ESI Spreadsheet. (R. Doc. 87 at 3).

According to the ESI Spreadsheet, the parties agreed to search for ESI in the possession of Charles Hill, Walt Sylvest, and Mark Brown for certain time frames.  (R. Doc. 87-1 at 1).  The ESI Spreadsheet is less clear about the applicable "search terms" for Request for Production No. 4.  The document contains what appears to be rejected search terms and a placeholder for identifying proper search terms: "~~PSC OR Public Service Commission~~ and ~~Bid OR Offer~~" and "Identify bidders and use bidder names as search terms." (R. Doc. 87-1 at 1).  In a footnote, the Customer Cooperatives identifies the specific terms (presumably the names of the bidders) that were used to in the actual search: "CLECO, Constellation, Entergy, LaGen, Calpine, or AEP" for WST and "SWEPCO, Entergy, Constellation, Entergy, Arkansas Electric Power Cooperative (or AEPC), or Western Farmers Electric Cooperative (or WFEC)." (R. Doc. 102 at 7 n.7).  The Customer Cooperatives represent that they have "produced 241 documents tagged as responsive to Request for Production No. 4" based on the foregoing the terms found in the ESI Spreadsheet, and that they other otherwise obtained and produced "all filings and responses to data requests by the LPSC" that would be responsive to this request. (R. Doc. 102 at 7).

It is unclear whether and when the Customer Cooperatives identified the foregoing entities as the "bidders" at issue to LaGen on or before August 17, 2018.  Given the ambiguities with respect to the actual search conducted with respect to Request for Production No. 4, the Court will require the Customer Cooperatives to identify, if it has not done so previously, the names of all bidders at issue.  To the extent any bidders were not include in the specific search

terms to locate the produced ESI, the Customer Cooperatives must run the additional appropriate searches, and make a supplemental production.

### 4. The Customer Cooperative's Motion for a Protective Order Concerning Certain Rule 30(b)(6) Deposition Topics (R. Doc. 52)

The Customer Cooperatives seek a protective order precluding questioning on eight topics pertaining to timely noticed Rule 30(b)(6) depositions. (R. Doc. 52). The Customer Cooperatives argue that Topics 1, 14-19, and 21 of the deposition notices are overly broad, not described with reasonable particularity, and would subject them to undue burden. The Court stayed the depositions until resolution of the instant motion. (R. Doc. 53).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were

overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

### i.  Topic 1

Topic 1 seeks testimony on "[t]he documents and information requested" in LaGen's "First Set of Interrogatories and Requests for Production of Documents" served on the Customer Cooperatives. (R. Doc. 52-2 at 3; R. Doc. 52-3 at 3).  The Customer Cooperatives argue that the subject matter of Topic 1 is not sufficiently particularized, is unreasonably cumulative or duplicative of the written discovery requests, and should otherwise be limited because certain interrogatories in the discovery requests constitute "contention interrogatories regarding technical subjects" that the Customer Cooperatives will respond to after receiving LaGen's expert reports. (R. Doc. 52-1 at 3-4).  The Customer Cooperatives further assert that, with respect to the requests for production, they had "already produced all of the Board meeting minutes for both WST and Claiborne covering a nearly 20 year period," and that the productions were ongoing at the time the motion was filed. (R. Doc. 52-1 at 4-5).

In opposition, LaGen argues that Topic 1 is sufficiently particularized because the individual written discovery requests themselves are particularized. (R. Doc. 62 at 4).  While arguing that the subject matter is neither cumulative nor duplicative because the Customer Cooperatives did not answer, or fully answer, the written discovery requests, LaGen seeks to limit the scope of Topic 1 with respect to interrogatories to Interrogatory Nos. 2, 10, 12-17, 20-24 served on WST, and Interrogatory Nos. 2, 8, 10-15, 18-22 served on Claiborne. (R. Doc. 62 at 4-6).  LaGen also addresses the Customer Cooperatives' assertions with respect to their

document productions, stating, among other things, that all document requests were subject to objection. (R. Doc. 62 at 6-7).

The Court agrees with the Customer Cooperatives that Topic 1, which generally refers to LaGen's written discovery, is overly broad, and fails to describe the topic with reasonable particularity. *See Acosta v. Med. Staffing of Am., LLC*, No. 18-226, 2019 WL 911268, at *1 (E.D. Va. Feb. 20, 2019) (finding overly broad and not reasonably particular Rule 30(b)(6) deposition topic on "[t]he subjects addressed in Plaintiffs Interrogatories, Requests for Admissions and Requests for Production of Documents"); *see also Scioneaux v. Elevating Boats, LLC*, No.10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) ("[S]tating that the topics of discussion will correlate with the document requests is too broad, vague, and ambiguous to properly comply with Rule 30(b)(6)."); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98-3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000) (denying motion to compel Rule 30(b)(6) deposition on "[Plaintiff's] responses to Defendants' Interrogatories and requests for production, along with the subjects identified therein" as compliance would be overly burdensome).

Based on the foregoing, the Court will not require the Customer Cooperatives to provide testimony on Topic 1 as written.

### ii.     Topic 21

Topic 21 seeks testimony on "[t]he allegations in the Complaint for Breach of Contract and Declaratory Judgment in the captioned matter." (R. Doc. 52-2 at 5; R. Doc. 52-3 at 5).  The Customer Cooperatives argue that this topic is overly broad.  In opposition, LaGen argues that the topic constitutes a proper inquiry into both factual and legal contentions. (R. Doc. 62 at 13-15).

The Court agrees with the Customer Cooperatives that Topic 21, which generally refers to allegations in the Complaint, is overly broad, and fails to describe the topic with reasonable particularity. *See Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. 11-2405, 2017 WL 2831700, at *3 (E.D. La. June 30, 2017) ("By simply referring generally to the Plaintiff's RICO statement and its Third Amended Complaint without any distinction as to specific allegations, the Defendant has not provided reasonably particularized notice such that the Plaintiff can meet its obligation to prepare its representative.") (citation omitted); *see also Alexander v. Federal Bureau of Investigation*, 188 F.R.D. 111, 114 (D.D.C. 1998) (rejecting notice to depose on "any other matters relevant to this case, or which may lead to the discovery of relevant evidence" as not meeting the "reasonable particularity" requirement).

While the Court will not require the Customer Cooperatives to provide testimony on all allegations in the Complaint without limitation, the Court finds it appropriate to allow LaGen to elicit testimony from WST and Claiborne, respectively, with regard to their supplemental responses to the "contention" interrogatories discussed above, namely Interrogatory Nos. 12, 16-21, and 23 served on WST, and Interrogatory Nos. 10, 14-19, and 20 served on Claiborne. *See Malibu Consulting Corp. v. Funair Corp.*, 2007 WL 3995913, at *1 (W.D. Tex. Nov. 14, 2007) ("Rule 26(d) allows those methods of discovery to be used in any sequence. Although there is authority to the contrary, I agree with the line of cases which holds that a Rule 30(b)(6) deposition which seeks information concerning the factual support for allegations found in the complaint, which would be discoverable through contention interrogatories . . . is permissible."); *United States E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006) ("The court denies the defendant's request to require the use of contention interrogatories in lieu of a Rule 30(b)(6) deposition on the areas of examination in dispute here. . . . The affirmative defenses are

obviously legal in nature, but the facts which support them are not."); *Security Ins. Co. of*

*Hartford v. Trustmark Ins., Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) ("It is of no consequence

that contention interrogatories may be the more appropriate route to obtain the information as

nothing precludes a deposition either in lieu of or in conjunction with such interrogatories.").

### iii.    Topics 14-19

Topics 14-19 are as follows:

14. Any files, communications, documents, or other information related to the Power Supply and Service Agreement between Louisiana Generating LLC and Washington-St. Tammany Electric Cooperative, Inc. dated March 27, 2000, and as restated and amended thereafter from time to time (the "PSSA"), including but not limited to bids or offers for the supply of power to WST by entities other than LaGen, calculations and analyses, evaluations and recommendations, drafting and negotiation of the PSSA, board member discussion and approval of the PSSA, oversight of LaGen's and WST's compliance with the PSSA, and the provision(s) of the PSSA applicable to changes in Environmental Law (as that term is defined in the PSSA).

15. Any files, communications, documents, or other information related to the EPA's 2011 Mercury and Air Toxics Standards Rule, which Final Rule was published in the Federal Register on February 16, 2012 (the "MATS Rule"), including but not limited to LaGen's plans to bring its Big Cajun II power generating plant in New Roads, Louisiana ("BC II") into compliance with the MATS Rule, actual or estimated costs or actual or proposed plans for MATS compliance by any entity or individual other than LaGen, and any representations made by WST to others related to LaGen's MATS Rule compliance plan.

16. Any files, communications, documents, or other information related to the Consent Decree entered into between LaGen, the United States Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality ("LDEQ") on November 20, 2012, and finalized on March 5, 2013 when entered by the court, attached to the Complaint as Exhibit 6 (the "Consent Decree").

17. Any filings, communications, documents, or other information related to the Louisiana Public Service Commission ("LPSC") approval of the PSSA or any extensions thereto.

18. Any minutes, resolutions, communications, documents, or other information of WST, WST's board member, WST's employees, or WST's agents related to

the PSSA, MATS Rule compliance, LaGen's MATS Rule compliance plan, or the Consent Decree.

19. Any communications with other electric cooperatives related to LaGen, Environmental Law compliance costs, LaGen's MATS Rule compliance plan, or the Consent Decree.

(R. Doc. 52-2 at 4-5; R. Doc. 52-3 at 4-5). The Customer Cooperatives argue that these topics are overly broad because they seek testimony on a broad range of categories and sources of information, as well as extended time periods from 6 to 18 years. (R. Doc. 52-1 at 5-6). LaGen argues that these arguments are hyper-technical, as the actual topics relevant and central to this litigation, and offers to limit the scope of certain topics. (R. Doc. 62 at 7-12).

Having considered the arguments of the parties, the Court finds it appropriate to limit and redefine the topics as offered by LaGen:

14. The Power Supply and Service Agreement ("PSSA") between LaGen and the Customer Cooperatives (the "PSSA"). Inquiry into the PSSA shall be limited to the following subtopics: (i) bids or offers for the supply of power to WST by entities other than LaGen; (ii) calculations and analyses relating to the bid process; (iii) evaluations and recommendations related to the bid process; (iv) drafting and negotiation of the PSSA; (v) board member discussion and approval of the PSSA; (vi) oversight of LaGen's and the Customer Cooperatives' compliance with the PSSA; and (vii) the provision(s) of the PSSA applicable to changes in Environmental Law (as that term is defined in the PSSA).

15. The EPA's 2011 Mercury and Air Toxics Standards Rule, which Final Rule was published in the Federal Register on February 16, 2012 (the "MATS Rule"). Inquiry into the MATS Rule shall be limited to the following subtopics: (i) LaGen's plans to bring its Big Cajun II power generating plant in New Roads, Louisiana ("BC II") into compliance with the MATS Rule; (ii) actual or estimated costs of such compliance; (iii) actual or proposed plans for MATS compliance by any entity or individual other than LaGen; and (iv) any representations made by the Customer Cooperatives to others related to LaGen's MATS Rule compliance plan.

16. Communications between LaGen, the United States Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality ("LDEQ") on November 20, 2012, and finalized on March 5, 2013 when entered by the court, attached to the Complaint as Exhibit 6 (the "Consent Decree").

17. The Louisiana Public Service Commission ("LPSC") approval of the PSSA or any extensions thereto.

18. Documents related to the PSSA, MATS Rule compliance, LaGen's MATS Rule compliance plan, or the Consent Decree.

19. Communications with other electric cooperatives related to LaGen, Environmental Law compliance costs, LaGen's MATS Rule compliance plan, or the Consent Decree.

As restated above, Topics 14-19 are not overly broad. They seek testimony on various central issues in the underlying dispute. The Court finds the Customer Cooperatives' arguments with respect to the time frames for the topics to be overstated. For example, in opposing the motion, the Customer Cooperatives admit that they produced board meeting minutes covering a nearly 20-year period without objection.

## III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Extend Deadline for Completion of Fact Witness Depositions for Limited Purposes (R. Doc. 79) is **GRANTED IN PART and DENIED IN PART**. The continued deposition of Charles Hill shall take place within **45 days** of the date of this Order, or as otherwise agreed upon by the parties, as detailed in the body of this Order.

**IT IS FURTHER ORDERED** that Defendant's First Motion to Compel (R. Doc. 63) is **GRANTED IN PART and DENIED IN PART**. The Customer Cooperatives must supplement their discovery requests, as detailed in the body of this Order within **14 days** of the date of this Order, or as otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Compel (R. Doc. 85) is **GRANTED IN PART and DENIED IN PART**. The Customer Cooperatives must

supplement their discovery requests, as detailed in the body of this Order and within **14 days** of the date of this Order, or as otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Protective Order Concerning Certain Rule 30(b)(6) Deposition Topics (R. Doc. 52) is **GRANTED IN PART and DENIED IN PART**. The Rule 30(b)(6) depositions of the Customer Cooperatives shall take place within **45 days** of the date of this Order, or as otherwise agreed upon by the parties, as detailed in the body of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on April 24, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**