# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WASHINGTON-ST. TAMMANY ELECTRIC COOPERATIVE, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO. 17-405-JWD-RLB |
| LOUISIANA GENERATING, L.L.C. | |

## ORDER

Before the Court is Plaintiffs' Motion to Compel Discovery of Defendant's Consent Decree Negotiations with the Environmental Protection Agency. (R. Doc. 84). The motion is opposed. (R. Doc. 100).

## I.  Background

On June 28, 2017, Washington-St. Tammany Electric Cooperative, Inc. ("WST") and Claiborne Electric Cooperative, Inc. ("Claiborne") (collectively, "Plaintiffs" or the "Customer Cooperatives"), filed this breach of contract action against Louisiana Generating, L.L.C. ("Defendant" or "LaGen"). (R. Doc. 1, "Compl."). The Customer Cooperatives allege that they are non-profit electric cooperative corporations who obtain electric power from LaGen. (Compl. ¶¶ 1-4). The Customer Cooperatives seek a finding that LaGen breached certain Power Supply and Service Agreements ("Contracts")[1] by charging them for costs associated with LaGen's remediation of environmental conditions existing at the Big Cajun II power generating plant before the execution of the Contracts, as well as a declaration that LaGen may not assess such costs in the future. (Compl. ¶¶ 4-5). The Customer Cooperatives assert that in light of certain Environmental Law Clauses in the Contracts, LaGen "has exclusive responsibility for the costs

---

[1] The Contracts are attached to the Complaint as Exhibits 1-4. (R. Docs. 1-1, 1-2, 1-3, 1-4).

of complying with Environmental Laws existing prior to June 24, 2002, and also the costs of remediating environmental conditions that existed at the Big Cajun II power generating plant prior to June 24, 2002." (Compl. ¶¶ 7-10).

The Customer Cooperatives assert that LaGen has improperly assessed them with certain remediation costs incurred pursuant to a Consent Decree between LaGen and the Environmental Protection Agency ("EPA") and Louisiana Department of Environmental Quality ("LDEQ"). (Compl. ¶¶ 11-22). The federal action in which the Consent Decree was entered was brought by the EPA against LaGen on February 18, 2009 "pursuant to Sections 113(b) and 167 of the Clean Air Act ('the Act'), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ('PSD') provisions of the Act, 42 U.S.C. §§ 7470-92; the federally approved Louisiana PSD regulations of the Louisiana State Implementation Plan ('SIP'); Title V of the Act, 42 U.S.C. §§ 7661-7661f, and the federally approved Louisiana Title V program, or any rule or permit issued thereunder." *EPA v. Louisiana Generating*, Civil Action No. 09-100-JJB-RLB, ECF No. 1 at 1 (M.D. La. Feb. 18, 2009).[2] On March 5, 2013, the Court entered a Consent Decree providing, in pertinent part, the following:

> WHEREAS, the Settling Defendant affirms that a portion of the emissions technology, including related to PM emissions and refueling, under this consent decree, will allow it to comply with the Mercury [and] Air Toxics Rule, a change in environmental law promulgated after the filing of the complaint.

*Louisiana Generating*, ECF No. 427 at 4.[3] The Customer Cooperatives allege that "on the basis of this self-serving statement," LaGen has wrongly characterized remediation costs of past excess emissions of nitrous oxides ("NOx"), sulfur dioxide ("$SO_2$"), and particulate matter

---
[2] The EPA Complaint is attached to the Complaint as Exhibit 5. (R. Doc. 1-5).
[3] The Consent Decree is attached to the Complaint as Exhibit 6. (R. Doc. 1-6).

("PM") as related to the 2011 Mercury and Air Toxics Standards ("MATS") Rule, as opposed to environmental laws in effect prior to the execution of the Contracts. (*See* Compl. ¶¶ 21-31).[4]

The Customer Cooperatives specifically contend that the following five categories of costs have been wrongly assessed by LaGen: (i) the boiler conversion of Unit 2 at LaGen's Big Cajun II power plan from coal to natural gas (including natural gas pipeline costs); (ii) the installation of PM continuous emission monitoring systems ("CEMS") on Units 1 and 3; (iii) "certain costs" associated with the ash handling collection systems; (iv) "certain costs" of electrostatic precipitator ("ESP") upgrades; and (v) "certain costs" that LaGen has identified as MATS chemical costs. (Compl. ¶¶ 27, 30, 34, 37).

The Customer Cooperatives assert that LaGen has wrongly assessed them with approximately $38.1 million between 2016 and 2025 in remediation costs. (Compl. ¶ 28). The Customer Cooperatives allege that "[o]f the approximately $38.1 million in costs that [they] dispute, approximately $10.4 million are capital costs, approximately $16.2 million are interest expenses, and approximately $11.5 million are operations and maintenance expenses." (Compl. ¶ 28). The Customer Cooperatives challenge LaGen's position that it "has appropriately allocated chemical costs between the Activated Carbon Injection system (a mercury control) and the dry sorbent injection ('DSI') and SNCR [Selective Non-Catalytic Reduction system] required by the Consent Decree." (Compl. ¶ 29). The Customer Cooperatives assert that they have "already suffered significant harm, paying more than $7.6 million in unjustified charges from July 2015 through May 2017." (Compl. ¶ 31).

---

[4] *See* National Emission Standards for Hazardous Air Pollutants From Coal- and Oil-Fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units, 77 Fed. Reg. 9304 (Feb 16, 2012).

3

The Customer Cooperatives served on LaGen a Second Set of Interrogatories and Second Set of Document Requests on March 30, 2018, and a Third Set of Document Requests on April 13, 2018. (R. Doc. 39-7).

On June 12, 2018, the Customer Cooperatives filed a Motion for Leave to Serve Additional Discovery on Defendant. (R. Doc. 39). This motion sought modification of the Court's Scheduling Order to modify the April 13, 2018 deadline to complete written discovery to allow the Customer Cooperatives to timely serve the foregoing discovery requests. (R. Doc. 39). The Court denied the motion and found the discovery requests untimely. (R. Doc. 51).

The Customer Cooperatives filed the instant Motion to Compel on November 2, 2018, the deadline to file discovery motions and to take fact witness depositions. (R. Doc. 84).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure.

**B.     Analysis**

**1.     The Scope of the Motion to Compel**

Through the instant motion, the Customer Cooperatives seek an order declaring that all negotiations involving LaGen, EPA, and LDEQ with respect to the Consent Decree are not

subject to the attorney-client privilege because LaGen "has put the negotiations at issue in this proceeding and has waived the privilege." (R. Doc. 84 at 1). The Customer Cooperatives argue that this relief is appropriate because LaGen has "affirmatively" articulated the defense that "EPA required LaGen to 'memorialize' a LaGen MATS compliance plan in the Consent Decree" in both a February 2016 presentation to its customers and through the deposition testimony of LaGen's President, Jennifer Vosburg. (R. Doc. 84-1 at 8). The Customer Cooperatives argue that LaGen is improperly using the attorney-client privilege as a shield and sword, and has otherwise waived the privilege. (R. Doc. 84-1 at 7-8).

In opposition, LaGen argues that the instant motion is an improper attempt to circumvent the Court's order precluding the Customer Cooperatives from obtaining information pursuant to untimely discovery requests. (R. Doc. 100 at 6-8). LaGen further argues that the information sought is irrelevant because it is inadmissible pursuant to Rule 408 of the Federal Rules of Evidence, the information sought is subject to the attorney-client privilege and a "settlement privilege" under federal common law, and LaGen has not waived the foregoing privileges. (R. Doc. 100 at 8-22).

As discussed above, the deadline to complete written discovery has expired, and the Court has previously denied a motion by the Customer Cooperatives to serve additional written discovery beyond the expired deadline. (R. Doc. 51). To the extent the Customer Cooperatives seek an order extending the deadline to conduct written discovery, the instant motion is denied for failure to demonstrate good cause under Rule 16(b)(4) of the Federal Rules of Civil

6

Procedure.[5] Given the foregoing, the Court will limit the scope of the instant motion to the following three areas of discovery already conducted.

First, the Customer Cooperatives challenge LaGen's counsel's instructions to deponents during various depositions not to discuss "settlement discussions" between LaGen and EPA on the basis that those discussions are inadmissible or privileged. (R. Doc. 84-1 at 6). The specific depositions referenced (and the only depositions that the Court will consider) are the depositions of Jennifer Vosburg, Verne Shortell, and Doug Pedigo. The Customer Cooperatives have submitted excerpts of the depositions containing these instructions not to answer questions. (R. Docs. 84-5, 84-6, 84-7).

Second, the Customer Cooperatives challenge LaGen's objections to Topics 14, 51, and 52 of their Rule 30(b)(6) deposition notice on the basis that those topics inquire into statements made in settlement negotiations. (R. Doc. 84-1 at 6). In support of this assertion, the Customer Cooperatives submit a copy of LaGen's objections to the Rule 30(b)(6) deposition notice. (R. Doc. 84-8). The objections do not reference Topics 15, 51, and 52. Instead, LaGen objected to Categories 3, 9, 10 to the extent that they inquired into settlement negotiations (among other things).

Third, The Customer Cooperatives challenge LaGen's designation as attorney-client privileged eight entries on its privilege log dated between August 31, 2012 to September 7, 2012. (R. Doc. 84-1 at 7; *see* R. Doc. 84-9). The Customer Cooperatives suggests that these withheld communications must concern the settlement negotiations at issue, notwithstanding LaGen's testimony "that it made a decision to change its MATS compliance plan as part of a presentation

---

[5] The Customer Cooperatives do not expressly seek an extension of any deadlines under Rule 16(b)(4). They do assert, however, that there are "grounds for finding good cause to grant this motion." (R. Doc. 84 at 1). It is unclear what this assertion of "good cause" references because the Customer Cooperatives do not seek a protective order.

7

by three non-attorney employees in 'early' September 2012" and "that the change was not driven by the settlement negotiations with EPA." (R. Doc. 84-1 at 7).

## 2. The Attorney-Client Privilege

The attorney-client privilege protects communications, made in confidence, between the client and the attorney for the purpose of obtaining/giving legal advice, and the party invoking it has the burden of demonstrating each element of the privilege. *King v. University Healthcare System, L.C.*, 645 F.3d 713, 720 (5th Cir. 2011). "The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Furthermore, "[w]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). "The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Id*. (internal punctuation omitted).

The Customer Cooperatives argue that LaGen has waived its assertions of attorney-client privilege with respect to the Consent Decree settlement negotiations in lieu of statements made in LaGen's February 29, 2016 presentation to its customers titled "Big Cajun II Update" and statements made by Ms. Vosburg at her deposition. (R. Doc. 84-1 at 4-6). These statements concern the settlement negotiations between LaGen (or its parent company) with EPA. Nothing in these statements involve the disclosure of privileged communications between LaGen (or its parent company) and its counsel. Moreover, LaGen has not put its privileged communications

8

with respect to settlement negotiations at issue through its pleadings. With respect to the Consent Decree, which the Customer Cooperatives put at issue by commencing the instant action, LaGen does not assert any defense based upon its settlement negotiations. Instead, LaGen specifically asserts in its Answer that the "Consent Decree is a matter of public record and that written documents are the best evidence of the content, substance, terms and provisions contained therein." (R. Doc. 30 at 11).

Based on the foregoing, the Court finds no basis for concluding that LaGen has waived the attorney-client privilege with respect to confidential communications between LaGen and its own counsel concerning settlement negotiations with EPA or LDEQ, whether that privilege was raised with respect to deposition testimony or withheld documents. Furthermore, the Customer Cooperatives have made no specific arguments otherwise challenging the propriety of LaGen's designation as attorney-client privileged eight entries on its privilege log dated between August 31, 2012 to September 7, 2012. The privilege log indicates that all of the communications involved counsel and pertain to the communication of legal advice regarding litigation or environmental law. (R. Doc. 84-9).[6] Accordingly, the Court will not require LaGen to disclose any attorney-client privileged communications in light of the instant motion.

### 3. The Consent Decree Negotiations

The Court continues its analysis because LaGen has also instructed deponents not to answer questions, or otherwise objected to Rule 30(b)(6) topics, on the basis that the questions also inquired into settlement negotiations involving LaGen, EPA, and LDEQ with respect to the Consent Decree. While the Court has concluded that confidential communications between

---

[6] In addition, three of the communications were also withheld on the basis of work product immunity. The Customer Cooperatives raise no arguments based on that doctrine.

LaGen and its counsel remain protected by the attorney-client privilege, the Court must determine whether third-party settlement negotiations are also protected from discovery.

LaGen argues that the settlement negotiations are outside the scope of discovery because such negotiations are irrelevant and also subject to a "settlement privilege" under federal common law. Both of these arguments focus on Rule 408 of the Federal Rules of Evidence, which provides the following:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> > **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

LaGen's argument based on relevance is misplaced. "Information within the scope of discovery need not be admissible in evidence to be discoverable." *See* Fed. R. Civ. P. 26(b)(1). Accordingly, even if evidence of settlement negotiations is ultimately ruled as inadmissible pursuant to Rule 408, that evidentiary rule does not necessarily preclude discovery of settlement negotiations. *See*, *e.g.*, *Nutrition Distribution LLC v. IronMag Labs, LLC*, No. 15-8233, 2018 WL 6307882, at *1 (C.D. Cal. Oct. 29, 2018) (rejecting objections to discovery based on Rule 408 of the Federal Rules of Evidence in light of the scope of discovery as defined by Rule 26 of the Federal Rule of Civil Procedure); *Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, No. 11-

08, 2012 WL 12862826, at *2 (W.D. Tex. Jan. 6, 2012) ("Because Federal Rule of Civil Procedure 26 makes clear that inadmissable evidence may be discoverable, it follows that Rule 408 does not render settlement discussions undiscoverable merely by making them inadmissible.").

Evidence of settlement negotiations may be admissible under certain circumstances. Fed. R. Evid. 408(b). Among other things, evidence of settlement negotiations may be admissible for the purposes of interpreting a settlement agreement. *See Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 454 n.4 (5th Cir. 2003); *see also Westchester Specialty Ins. Services, Inc. v. U.S. Fire Ins. Co.,* 119 F.3d 1505, 1512–13 (11th Cir. 1997) (admitting evidence of settlement "for the permissible purpose of resolving a factual dispute about the meaning of the settlement agreement"); *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982) (explaining that evidence regarding a settlement may be admissible to demonstrate the settlement's terms).

The Court finds it appropriate to allow discovery with respect to the Consent Decree settlement negotiations. The Fifth Circuit has recognized that a Consent Decree is subject to general principles of contract interpretation, which may allow for the admission of parol evidence if the terms of the Consent Decree are ambiguous:

> Consent decrees have a 'hybrid nature' between judgment and contract. Thus, when interpreting a consent decree, general principles of contract interpretation govern. The determination of whether a contract is ambiguous is left to the court while the interpretation of a contract found to be ambiguous is left to the jury. However, consent decrees are judgments despite their contractual nature. . . .
>
> A consent decree is ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction. As part of determining whether ambiguity exists, the court must look at the contract as a whole in light of the circumstances existing at the time of execution. If a question relating to a contract's construction or ambiguity arises, the court examines the contract's wording in context of the surrounding

11

circumstances. Additionally, parol evidence may be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.

*City of El Paso, Tex. v. El Paso Entm't, Inc.*, 464 F. App'x 366, 370-72 (5th Cir. 2012) (internal citations and punctuation omitted); *see also Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981) ("Although parol evidence is inadmissible to vary the terms of a written contract . . ., when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties.") (citations omitted). Accordingly, while parol evidence may not ultimately be admissible with respect to the interpretation of the Consent Decree, it is nevertheless relevant to the parties' claims and defenses in this action.[7]

In support of its argument that the Court should recognize a "settlement privilege" in the federal common law, LaGen relies upon the Sixth Circuit decision *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Other circuits have declined to adopt an implied settlement privilege. *See In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed. Cir. 2012) (declining to adopt a settlement privilege with respect to royalties and damage calculations in patent litigation action in light of the various factors identified by the Supreme Court in assessing the propriety of recognizing an implied privilege); *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n. 20 (7th Cir. 1979) (finding "no convincing basis" for proposition that "the conduct of the settlement negotiations is protected from examination by

---

[7] LaGen acknowledges in support of its own motion to compel that non-contractual evidence of a parties' intent with respect to a contract is discoverable prior to a legal determination with respect to whether the contractual language is ambiguous. (R. Doc. 85-2 at 7-9). The trial judge has the discretion to decide at the appropriate time before or during trial whether evidence of settlement negotiations is admissible for this purpose (or any other purpose) under Rule 408. *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984) ("Whether to admit evidence [under Rule 508] for another purpose is within the discretion of the trial court. . . .").

12

some form of privilege"); *see also In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 207-12 (D.D.C. 2005) (rejecting *Goodyear* analysis); *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, No. 05-3148, 2007 WL 963975, at *2-6 (N.D. Cal. Mar. 30, 2007) (same); *Performance Aftermarket Parts Grp., Ltd. v. TI Grp. Auto. Sys., Inc.*, No. 05-4251, 2007 WL 1428628, at *3 (S.D. Tex. May 11, 2007) (same). The Fifth Circuit has not recognized an implied settlement privilege under the federal common law. Given the language of Rule 408, the analysis in the foregoing decisions, and the Fifth Circuit's jurisprudence with respect to the potential admissibility of settlement negotiations with respect to the interpretation of Consent Decrees, the Court finds no basis for holding that an implied settlement privilege precludes discovery of the settlement negotiations involving LaGen, EPA, and LDEQ with respect to the Consent Decree.

Given the foregoing, the Court will allow the Customer Cooperatives to question Jennifer Vosburg, Verne Shortell, Doug Pedigo, and LaGen (through its corporate representative) about LaGen's settlement negotiations involving LaGen, EPA, and LDEQ with respect to the Consent Decree. LaGen's counsel improperly instructed the individual deponents to not respond to questions regarding settlement negotiations to the extent such questioning did not seek confidential communications between LaGen and its counsel. *See* Fed. R. Civ. P. 30(c)(2). Similarly, to the extent LaGen withheld testimony with respect to Categories 3, 9, and 10 as identified in LaGen's objections to its deposition notice, LaGen must provide a Rule 30(b)(6) representative for further questioning.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Discovery of Defendant's Consent Decree Negotiations with the Environmental Protection Agency (R. Doc. 84) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Customer Cooperatives may question the following deponents on settlement negotiations involving LaGen, EPA, and LDEQ with respect to the Consent Decree: Jennifer Vosburg, Verne Shortell, and Doug Pedigo. The continued depositions shall take place within **15 days** of the date of this Order, or as otherwise agreed upon by the parties, and shall not exceed one hour each.

**IT IS FURTHER ORDERED** that the Customer Cooperatives may question LaGen on Categories 3, 9, and 10 as identified in LaGen's objections to its deposition notice. The continued Rule 30(b)(6) deposition of LaGen shall take place within **15 days** of the date of this Order, or as otherwise agreed upon by the parties, and shall not exceed two hours.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on May 1, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**