# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

WASHINGTON-ST. TAMMANY
ELECTRIC COOPERATIVE, INC., AND
CLAIBORNE ELECTRIC COOPERATIVE, INC.

CIVIL ACTION

VERSUS

NO. 17-405-JWD-RLB

LOUISIANA GENERATING, LLC

## RULING AND ORDER

This matter is before the Court on a *Motion to Dismiss for Lack of Subject Matter Jurisdiction* ("*Motion*") filed by Louisiana Generating LLC ("Defendant" or "LaGen"). (Doc. 183.) LaGen also filed *Louisiana Generating LLC's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction*. (Doc. 188.) In response, Plaintiff filed *Memorandum in Opposition to Louisiana Generating LLC's Motion to Dismiss*. (Doc. 193.) In reply, Defendant filed *Louisiana Generating LLC's Reply Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction*. (Doc. 197.) The Court held oral argument on the *Motion* on January 16, 2020.[1] Having considered the arguments raised by the parties, the facts,

---

[1] At oral argument, the Court also heard argument on *Louisiana Generating LLC's Motion to Disqualify Counsel for Plaintiffs*. (Doc. 203.) The Court is ruling on the *Motion to Dismiss* rather than the *Motion to Disqualify* because, as the Supreme Court has explained, subject-matter jurisdiction is "fundamentally primary." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). In addition, there is Fifth Circuit dicta that supports the proposition that where a court does not have subject matter jurisdiction, a motion to disqualify counsel is moot. *Enable Mississippi River Transmission, LLC v. Nadel & Gussman, LLC*, 844 F.3d 495, 501 (5th Cir. 2016) ("Having concluded that this court lacks subject matter jurisdiction to hear the underlying suit, we deny as moot Enable's motion to disqualify Nadel's counsel.") In addition, as a general rule a jurisdictional question is decided first, as the Southern District Mississippi stated,

> Courts have regularly found that when faced with contemporaneous motions to dismiss for lack of jurisdiction and to disqualify an attorney, it is proper to decide the jurisdictional question first. *See Rice v. Rice Found.*, 610 F.2d 471, 478 (7th Cir. 1979) (explaining that district court must have and exercise subject matter jurisdiction before ruling on motion to disqualify); *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 645-646 (E.D. Tex. 2009) (concluding that subject matter jurisdiction was lacking so that case could not proceed on the merits, thus making motion to disqualify counsel moot); *Dinger v. Gulino*, 661 F. Supp. 438, 442 (E.D.N.Y. 1987) (concluding that question of jurisdiction should be considered before motion to disqualify attorney since "[a]bsent jurisdiction, it would be inappropriate for this Court to enter orders, even regarding a

the law and for reasons set out below, the Court will grant the *Motion* and dismiss the case for lack of subject matter jurisdiction.

## I.     RELEVANT FACTS

*a.  Factual background*

Washington St. Tammany Electric Cooperative, Inc. and Claiborne Electric Cooperative, Inc., (together, "Plaintiffs") are member-owned, non-profit electric cooperative corporations organized under the laws of Louisiana and domiciled in Louisiana. (Doc. 1 at ¶¶ 1-2.) Plaintiffs filed this case alleging that Louisiana Generating, LLC ("LaGen" or "Defendant") breached its contracts with Plaintiffs by charging Plaintiffs for costs associated with remediation of environmental conditions that existed before the contracts were executed. Plaintiffs also seek a declaration that LaGen may not assess such costs in the future. (Doc. 1 at 1.)

Defendant owns and operates electric power generation and transmission operations including the plants at issue in the case. (Doc. 1 at ¶ 3.) As a producer of electricity, LaGen has a market-based tariff ("LaGen Tariff") with the Federal Electric Regulatory Commission ("FERC") that states in relevant part:

LOUISIANA GENERATING LLC

FERC ELECTRIC TARIFF, VOLUME NO. 1

1. Availability: Louisiana Generating LLC ("Seller") makes available under this Tariff the following services to customers with whom Seller has contracted:

> a. electric energy and capacity available under this tariff to any purchaser; and

> b. ancillary services, as described in section 5 below.

---

motion to disqualify an attorney"); *Vetter v. Sands*, No. 81 Civ. 5072, 1984 WL 794, 2 (S.D.N.Y. Aug. 23, 1984) (finding that defense motion to disqualify plaintiffs' counsel should be continued until determination of motion to dismiss challenging subject matter jurisdiction); *see also Arora v. Hartford Life and Annuity Ins. Co.*, 519 F. Supp. 2d 1021, 1024 (N.D. Cal. 2007) (granting motion to remand based on lack of subject matter jurisdiction and declining to rule on motion to disqualify). *Heimer v. Knight*, No. 3:13CV115TSL-JMR, 2013 WL 12209912, at *1 (S.D. Miss. May 16, 2013).

2. Applicability: This Tariff is applicable to all wholesale power sales, including energy and capacity sales not otherwise subject to a particular rate schedule of Seller, and applicable ancillary services.

3. Rates: All sales shall be made at rates established by agreement between the purchaser and Seller.

4. Other Terms and Conditions: All other terms and conditions shall be established by agreement between the purchaser and Seller. . . .

(Doc. 188-5 at 4.) LaGen had previous market-based tariffs starting on March 29, 2000. (Doc. 188 at 6, n.13 (*citing* Doc. 1).)

Pursuant to the LaGen Tariff, Plaintiffs contracted with LaGen in Power Supply and Service Agreements ("PSSAs") that set the rates, charges and terms and conditions for the electrical power. (Doc. 1 at ¶ 4.) The PSSAs are filed with FERC. (Doc. 1 at ¶ 4.) At issue in this case is Section 10.4 ("Environmental Law Clause") of the PSSAs, which states in relevant part:

BUYER and SELLER agree that the rates contained in this Agreement make no provision for the potential effects of a change in Environmental Law (including without limitation any new law or regulation, any change in any existing law or regulation or any change in the interpretation of any law or regulation), the additional costs of complying with such change in continuing to provide electric service to BUYER or any increased costs incurred by SELLER due to a decrease in operating efficiency caused by such a change. In the event of such change, then the Parties shall meet, upon written notice from SELLER, to discuss the effect of such change on SELLER and the Parties' efforts to mitigate the costs thereof. BUYER agrees to pay its portion of such costs in a manner computed by SELLER to recover all of such costs (including a reasonable return of and return on capital in accordance with the terms of this Section) from SELLER's customer. In no event shall Buyer be required to pay the cost of any activities to remediate any environmental condition in existence at the Plants prior to such change of law or any penalties charges or costs resulting from the breach or violation of any Environmental Law (now existing or hereinafter enacted).

(Doc. 1-1 at 35; and Doc. 1-3 at 30.)

In 2009, the United States Environmental Protection Agency ("EPA") filed a complaint against LaGen alleging violations of the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act. (Doc. 1 at ¶ 11.) To resolve this action LaGen entered into a consent decree with EPA ("Consent Decree") and agreed to take certain remediation measures.

(Doc. 1 at ¶ 16-17.)  A recital in the Consent Decree states that LaGen "affirms that a portion of the emissions technology, including related to PM emissions and refueling, under this consent decree, will allow it to comply with the Mercury Air Toxics Rule [sic], a change in environmental law promulgated after the filing of the Complaint." (Doc. 1 at ¶ 21.) Plaintiffs allege that Defendant has passed on the charges of compliance with the Consent Decree impermissibly by improperly classifying remediation costs required under the Consent Decree as related to the Mercury Air Toxics Rule ("MATS"). (Doc. 1 at ¶ 21-26.)

Plaintiffs' Complaint contains two counts: Count 1 – Breach of Contract; and Count II – Declaratory Judgment.

*b.  The jurisdictional allegations of the Complaint relate to the Federal Power Act*

Plaintiffs allege in the Complaint that federal jurisdiction is appropriate because the PSSAs:

> are within the scope of the Federal Power Act, 16 U.S.C. §§ 791a et seq., which provides that:
>
> > all rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the [Federal Energy Regulatory] Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.
>
> 16 U.S.C. § 824d(a). The [PSSAs], along with the tariffs contained therein, specify the rates, charges, terms and conditions for the sale of electric energy at wholesale in interstate commerce, and were filed with, and accepted by, the Federal Energy Regulatory Commission under the Federal Power Act as required by the [PSSAs]. . . .

(Doc. 1. at ¶ 4.) Plaintiffs further allege original jurisdiction arises because:

> LaGen now seeks to unilaterally and unreasonably alter those rates in contravention of the Federal Power Act and the Contracts. Under these circumstances, this court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, because this action presents questions of federal law, and, more particularly pursuant to 28 U.S.C. § 1337, because this action arises under federal laws regulating commerce. *See Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246 (1951).

(Doc. 1 at ¶ 5.)

## II.    APPLICABLE STANDARD

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute,

they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,

668 F.3d 281, 286-87 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998), *Hall v. Louisiana*, 12

F. Supp. 3d 878 (M.D. La. 2014)). Under Federal Rule of Civil Procedure 12(b)(1), a claim is

"properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or

constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of

Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

The Fifth Circuit Court of Appeals has explained the standard for motions pursuant to

Rule 12(b)(1) as follows:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a
> party to challenge the subject matter jurisdiction of the district court to hear a case.
> Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any
> one of three instances: (1) the complaint alone; (2) the complaint supplemented by
> undisputed facts evidenced in the record; or (3) the complaint supplemented by
> undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro
> v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting
> jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995).
> Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does
> in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions,
> the court should consider the Rule 12(b)(1) jurisdictional attack before addressing
> any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)
> (per curiam).

Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from

prematurely dismissing a case with prejudice." *In re FEMA Trailer Formaldehyde Prods. Liab.

Litig.*, 668 F.3d at 286-87.

> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## III.   DISCUSSION

*a. Parties' arguments*

  1. Defendant's arguments

Defendant argues in the *Motion to Dismiss* that the Court lacks subject matter jurisdiction over the case because there is no federal question jurisdiction. (Doc. 188 at 9.) Defendants maintain that federal question jurisdiction does not exist because: (1) Plaintiffs' cause of action arises under the Louisiana law of obligations; (2) Plaintiffs' right to relief does not depend on the resolution of a substantial question of federal law; and (3) federal question jurisdiction does not exist merely because the dispute arises out of a contract that is filed with Federal Energy Regulatory Commission ("FERC"). (Doc. 188 at 9-24.)

Defendant argues that federal question jurisdiction can be invoked by (1) either pleading a cause of action created by federal law or (2) by pleading a state law claim that implicates significant federal issues. (Doc. 188 at 9.) If federal question jurisdiction is based on a state law claim that implicates significant federal issues then, Defendant argues, a plaintiff must show that: (1) resolving the federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. (Doc. 188 at 9 (citing, *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008)).)

### A. *Plaintiff's claim does not arise under federal law.*

Defendant maintains that Plaintiffs' cause of action does not arise under federal law because the Federal Powers Act, 16 U.S.C. § 824d(a), does not create a private right of action. (Doc. 188 at 9 (citing, *Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246 (1951)).) As such, Defendant maintains that there is no private right of action under the FPA to seek a "just and reasonable" rate. (Doc. 188 at 9.) In support of its argument, Defendant cites *City of Gainesville v. Florida Power & Light Co.*, 488 F.Supp. 1258, 1270-1275 (S.D. Fla. 1980) for the proposition that the FPA provides neither an express nor implied private cause of action. Defendant asserts that in *City of Gainesville*, the court stated that Congress's intent under § 824d(a) was "to create a fairly common rate-making and regulatory scheme." (Doc. 188 at 9 (citing, 488 F.Supp. at 1271-72).) Defendant argues that the structure of the FPA supports this analysis as it provides an exclusive administrative remedy before FERC to contest rates or tariff violations and provides appeals rights. (Doc. 188 at 11.) Therefore, Defendants argue that federal law cannot form the basis of Plaintiffs' claims.

### B. *Plaintiffs' right to relief does not depend on the necessary resolution of a substantial question of federal law.*

Defendant argues because federal law does not form the basis of Plaintiffs' claims, federal question jurisdiction can only arise if the state law claim implicates federal issues. (Doc. 188 at 11-12.) Defendant states the Supreme Court in *Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), set out a four part test to determine federal question jurisdiction over state law claims: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and(4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." (Doc. 188 at 12.)

First, Defendant argues that resolution of the case depends on the interpretation of Section 10.4 of the PSSAs, which is a state-law contract issue. (Doc. 188 at 13.) Defendant points to the fact that Plaintiffs' Motion for Partial Summary Judgment on liability does not reference the FPA, the FERC tariff; or "just and reasonable rates." (Doc. 188 at 13.) Instead, Defendant highlights that Plaintiffs case rests on an alleged contractual right, not a federal right, and interpretation of the contractual provision will not affect any party outside of those contracted. (Doc. 188 at 13.) In support of its argument, Defendant points the Court to *Pacific Gas and Elec. Co. v. Arizona Elec. Power Coop., Inc.*, 479 F. Supp.2d 1113, 1125-26 (E.D. Cal. 2007). The court in *Pacific Gas*, explained,

> [t]he Plaintiffs are seeking to enforce a private contract between private parties which will afford relief only if the contract terms, from wherever drawn, are found to have been breached . . . it is not the federal tariff itself, standing as the law, that will give life to the merits of Plaintiffs' claim. It is the contract language, standing only as a representation of the agreement between the Parties, that will inform the resolution of this matter. . . . On that same note, this is not a suit alleging violations of the FPA itself or of any rule or regulation thereunder. Instead, this is a suit to enforce a contract between private parties that has merely incorporated by reference terms that are contained in a federal regulation.

(Doc. 188 at 13-14 (citing, 479 F. Supp. 2d at 1125-26).) Defendant argues that this case is analogous and therefore, resolving a federal issue is not necessary to the resolution of the Plaintiffs' claims. (Doc. 188 at 14.)

Second, Defendant argues that the alleged federal question is not in dispute. (Doc. 188 at 14.) Specifically, Defendant maintains that there is no dispute that Section 10.4 of the PSSAs is just and reasonable as provided under Section 15.16 of the PSSAs. (Doc. 188 at 14.) Instead, the dispute centers on the interpretation of the contractual provision and application of that interpretation to the facts of the case. (Doc. 188 at 14.) Because it is not necessary to interpret any provision of the tariff or whether its terms are just and reasonable, there is no dispute as to the federal question. (Doc. 188 at 14.)

Third, Defendant argues the alleged federal question is not substantial because a court's decision as to the contractual provision will not impinge on the operation of public utilities in other states. (Doc. 188 at 14-15.) Defendant asserts that courts routinely hold that a federal question is not substantial when it does not present a "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases," but rather is "fact-bound and situation-specific." (Doc. 188 at 15 (citing, *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014); and *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (holding no federal question jurisdiction where there was "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.")).)

Defendant analogizes this case to that of *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325 (8th Cir. 2016).[2] The Eighth Circuit in *Great Lakes Gas Transmission* recognized,

> there is little national interest in having a federal court interpret tariff provisions if it will merely apply state law [because] [a]ny interpretation by a federal court of the language of the tariffs will only speak to how those tariffs should be construed in this state. Accordingly, the reach of any such adjudication will not have federal reverberation. In addition, to the extent federal interests are implicated, the state court is quite competent to apply the language of the tariffs and is certainly well positioned to do so where, as here, the tariff language is to be construed in accord with state law.

(Doc. 188 at 15 (citing, 843 F.3d at 332-333) (internal quotations and citations omitted).)

Defendant likewise points out that because there is no private right of action under the FPA,

---

[2] *Great Lakes Gas Transmission* arose under the National Gas Act rather than the Federal Power Act. However, the jurisdictional components of the statutes are identical, and courts have repeatedly cited the decisions interpreting the "just and reasonable rates" provision of each statute interchangeably. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578 at n.7 (1981) ("*Montana-Dakota Utilities* was a case under the Federal Power Act rather than under the Natural Gas Act, but as we have previously said, the relevant provisions of the two statutes are in all material respects substantially identical. In this opinion we therefore follow our established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes.") (internal quotations and citations omitted).

Congress did not intend to have the interpretation of a FERC-filed contract to confer federal question jurisdiction. (Doc. 188 at 16.)

Last, Defendant asserts that the exercise of federal question jurisdiction would disturb the balance of federal and state judicial responsibilities because state courts should resolve state-law contract claims. (Doc. 188 at 16.) Defendant again cites to the Eighth Circuit's analysis in *Great Lakes Gas Transmission*, in which the court explained that the balance of federal and state judicial responsibilities would be disturbed because:

> First, the combination of no federal cause of action and no preemption of state remedies serves as an important clue suggesting a congressionally approved balance *disfavoring* federal involvement. Second, the presence of the exclusive jurisdiction provision indicates that Congress did *not* intend this particular type of case to end up in federal court, because exclusive jurisdiction over breach of contract cases would result in the very disturbance that *Grable* warned against. Specifically, exclusive federal jurisdiction over these cases would preclude state courts from adjudicating contract disputes governed by their own state law. As the Supreme Court has emphasized, when a statute mandates, rather than permits, federal jurisdiction—thus depriving state courts of all ability to adjudicate certain claims—our reluctance to endorse broad readings, if anything, grows stronger. Our reluctance is especially heightened in this case because the interpretation of a contract is ordinarily a matter of state law to which we defer.

(Doc. 188 at 16-17 (citing, *Great Lakes Gas Transmission*, 843 F.3d at 334) (emphasis in original) (internal quotations and citations omitted).) Defendant maintains that this same federal and state balance is at issue in this case. (Doc. 188 at 17.)

### C. *The case does not arise under federal law because the dispute arises out of a contract that is filed with FERC.*

Defendant likewise argues this case does not arise under federal law merely because the relevant contract was filed with FERC pursuant to a FERC tariff and FERC tariffs have the force of federal law. (Doc. 188 at 17.) Defendant first points the Court to *Monforte Expl. LLC v. ANR Pipeline Co.*, No. 09-3395, 2010 WL 143712 (S.D. Tex. Jan. 7, 2010). In the context of a motion to remand, the court in *Monforte* examined whether federal question jurisdiction existed over a

breach of contract dispute between a natural gas producer and a natural gas pipeline company. At issue in the case was an Operational Flow Order that was issued pursuant to a FERC tariff. The defendant in *Monforte* argued that the implementation of the Operational Flow Order, required interpretation of the FERC tariff and thereby created federal question jurisdiction. The court was not persuaded and explained

> It is true that [Plaintiff's] OFO was issued pursuant to its FERC tariff, and such tariffs take on the force of federal law. *See Carter v. Am. Tel. & Tel. Co.,* 365 F.2d 486, 496 (5th Cir.1966) ("[A] tariff, required by law to be filed, is not a mere contract. It is the law."). Since resolving the breach of contract claim will likely require an analysis of the validity and enforceability of the OFO under the FERC tariff, a court addressing this dispute will have to consider federal law. This does not mean, however, that [Plaintiff's] claim arises under federal law. [Plaintiff] alleges that [Defendant's] issuance of the OFO breached the Interconnect Agreement under Texas law; Monforte makes no allegation that the OFO was in violation or the FERC tariff. . . . While federal law may well be relevant in resolving the state law claim in this action, a Texas state court is competent to apply federal law.

*Monforte Expl. L.L.C. v. ANR Pipeline Co.*, No. 09-3395, 2010 WL 143712, at *4 (S.D. Tex. Jan. 7, 2010). Defendant analogizes this reasoning to this case arguing,

> even though the PSSAs were filed pursuant to the FERC tariff, the Plaintiffs can point to no specific provision of the tariff that is violated by the charge-through of the disputed costs — because that issue is governed by the PSSAs, not the tariff.

(Doc. 188 at 18-19.)

Defendant next points the Court to *Fla. Gas Transmission Co., LLC v. Bay Gas Storage Co.*, No. CIV.A. H-08-3472, 2009 WL 361592, at *3 (S.D. Tex. Feb. 11, 2009). The court in this case observed, "Importantly, once filed, tariffs take on the force of federal law." *Fla. Gas Transmission Co., LLC v. Bay Gas Storage Co.*, No. CIV.A. H-08-3472, 2009 WL 361592, at *3 (S.D. Tex. Feb. 11, 2009) (citing, *Carter v. Am. Tel. & Tel. Co.,* 365 F.2d 486, 496 (5th Cir.1966) ("[A] tariff, required by law to be filed, is not a mere contract. It is the law.")). However, the court reasoned that there was still not federal question jurisdiction because the

contract between the parties "exists apart from the filed tariffs and the [contract] fundamentally defines the parties' respective obligations" and the plaintiff's claims did not challenge the reasonableness of a federal law, regulation or tariff. (*Id.* at 4.) Defendant argues this reasoning is applicable in this case because

> [although] Plaintiffs have described their claim as related to a filed tariff, they do not challenge any specific provision of the tariff, nor do they challenge the reasonableness of the filed rate. Moreover, the filed rate is the contractually agreed upon rate that Plaintiffs also agreed was just and reasonable. The only disputed issues in the case are fact issues and state-law issues of contractual interpretation.

(Doc. 188 at 19.)

Defendant also reiterates the applicability of *Pacific Gas and Elec. Co. v. Arizona Elec. Power Coop., Inc.*, in which the agreement between the parties and the terms of the agreement would be construed according to state law. (Doc. 188 at 20.) The court determined that federal question jurisdiction did not exist, even though FERC tariffs were incorporated by reference into the agreement. The court explained,

> Any interpretation by a federal court of the language of the tariffs will only speak to how those tariffs should be construed in this state. Accordingly, the reach of any such adjudication will not have federal reverberation. In addition, to the extent federal interests are implicated, the state court is quite competent to apply the language of the tariffs and is certainly well positioned to do so where, as here, the tariff language is to be construed in accord with state law.

*Pacific Gas & Elec. Co. v. Arizona Elec. Power Coop., Inc.*, 479 F. Supp. 2d 1113, 1123 (E.D. Cal. 2007). Defendant states that this case is similar because

> In this case, the tariff provides that "all sales shall be made at rates established by agreement between the purchaser and the Seller." Further, "[a]ll other terms and conditions shall be established by agreement between the purchaser and the Seller." There is no need to interpret any provision of the tariff, because the tariff simply refers to the negotiated contracts.

(Doc. 188 at 21.) Further the PSSAs provide:

> This Agreement shall be governed by the laws of the State of Louisiana, except for any conflicts of laws, rules or principles calling for application of the laws of

another jurisdiction, or except when preempted by the federal law of the United States of America.

(Doc. 188 at 21.) Therefore, because no form of preemption has been alleged, Defendant

maintains that it is "the contract language, standing only as a representation of the agreement

between the Parties that will inform the resolution of this matter." (Doc. 188 at 21.)

Last, Defendant cites again to *Great Lakes Gas Transmission Ltd. P'ship v. Essar*, for the

proposition that the jurisdictional provision of the FPA does not create an express cause of action

under which a plaintiff can recover. The Eighth Circuit explained, interpreting the identical

jurisdictional provision under the National Gas Act ("NGA"):

> Although Section 717u of the NGA provides that district courts have "exclusive jurisdiction of violations of [the NGA] or the rules, regulations, and orders thereunder," 15 U.S.C. § 717u, the district court correctly ruled that this provision "does not create a cause of action, but merely states that federal district courts have exclusive jurisdiction over cases that otherwise arise under federal law or involve a substantial question of federal law." Indeed, "[e]xclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction." Thus, the NGA does not create an express federal cause of action.

*Great Lakes*, 843 F.3d at 329. Defendant reasons that in this case

> under FPA § 825p, the courts are granted exclusive jurisdiction of claims for violation of the FPA, but that does not mean that FPA § 825p creates a private cause of action. To the contrary, it merely recognizes that the federal district courts will have exclusive jurisdiction over cases that otherwise arise under the FPA or involve a substantial question of federal law.

(Doc. 188 at 22.)

2. Plaintiffs' response

Plaintiffs argue that there is federal question jurisdiction because the case arises under

federal law and presents substantial federal questions. (Doc. 193 at 1.) Plaintiffs maintain that the

case arises under federal law because

> [t]he contracts between Plaintiffs and Defendant Louisiana Generating, LLC ("LaGen") are on file with the Federal Energy Regulatory Commission ("FERC") under LaGen's FERC tariff. The tariff references the contracts as the method for

determining Plaintiffs' rates. Thus, interpretation of the contracts is a federal question.

(Doc. 193 at 1.) Plaintiffs also argue that the dispute requires interpretation of the Clean Air Act and its regulations, and a federal consent decree issued by this Court resolved alleged violations of federal law. Plaintiffs also take issue with the fact that Defendant filed this motion after discovery had been completed and the parties had filed motions for summary judgment. (Doc. 293 at 4.)

A. *Plaintiffs' claims arise under federal law*

Plaintiffs argue that although the central claim in the dispute is a breach-of-contract claim, the case still arises under federal law because "the PSSAs are governed by the FPA, are filed with FERC under [Defendant's] tariff, and are considered federal regulations by operation of law." (Doc. 193 at 8.) Plaintiffs maintain that service agreements filed under a FERC tariff apply with the force of federal law and are therefore the equivalent to a federal regulation. (Doc. 193 at 8-9 (citing *Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 429 (4th Cir. 2004) ([A] filed tariff carries the force of federal law."); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998); and *Mississippi ex rel. Hood v. Entergy Miss., Inc.*, No. 3:08-cv-780, 2015 WL 13448017, at *6 (S.D. Miss. Apr. 10, 2015)).)

Overall, Plaintiffs maintain that the PSSAs have the force of federal law because they are linked to the LaGen tariff. Plaintiffs argue:

> LaGen ignores that (1) the tariffs explicitly provide that the PSSAs are the instruments through which the rates and terms of service will be established; (2) the PSSAs are listed as power service agreements under LaGen's market-based rates in FERC's index of LaGen's tariffs/rate schedules, Danish Decl., Ex. B; and (3) federal regulation establishes that agreements for the sale of electricity such as the PSSAs are part of a seller's tariff.

(Doc. 193 at 9.) Plaintiffs' argument that the PSSAs have the force of federal law is first, a tariff is defined by the FERC regulations as "compilation, in book form, of rate schedules of a

particular public utility, effective under the [FPA], and a copy of each form of service agreement." (Doc. 193 at 9 (citing, 18 C.F.R. § 35.2(b), n.1 (2000)).) Second, that rate schedules "may take the physical form of a contractual document, purchase or sale agreement, lease of facilities, tariff or other writing." (Doc. 193 at 9, (citing, 18 C.F.R. § 35.2(b) (2000)).) Third, the PSSAs are rate schedules. (*Id.*) Therefore, Plaintiffs reason that the PSSAs are tariffs with the force and effect of federal law. (*Id.*)

Plaintiffs cite cases in support of the proposition that the agreements between parties that are filed with FERC have the force and effect of federal law. First, Plaintiffs point the Court to *New York State Gas & Elec. v. New York Indep. Sys. Operator, Inc.*, No. CIV.00-CV-1526HGMGJD, 2001 WL 34084006, at *6 (N.D.N.Y. Jan. 19, 2001). In *New York State Gas & Elec.*, the court examined whether there was federal question jurisdiction in a breach of contract case where the contracts specifically incorporated the tariffs into the service agreements between the parties. *New York State Gas & Elec*, 2001 WL 34084006, at *1. The court found:

> While these claims appear to be simple state claims on their face, each relate to the rights and duties of each party described in agreements that are incorporated into tariffs filed with FERC. Because these tariffs assume the mantel of federal law by virtue of their filing with FERC, the conclusion that federal subject matter jurisdiction exists and the action was properly removed seems inevitable.

*Id.* at *6. Plaintiffs argue that this case is analogous to *New York State Gas & Elec.* because the key fact relied on by the court to determine "federal jurisdiction is also present here: the service agreements are incorporated into LaGen's FERC tariff as the means of establishing rates, and thus, assume the mantel of federal law." (Doc. 193 at 10-11.)

Plaintiffs likewise point the Court to *City of Chanute, Kan. v. Kansas Gas & Elec. Co.*, No. 06-4096, 2007 WL 1041763 (D. Kan. Apr. 4, 2007). *City of Chanute*, the defendant argued for removal and federal jurisdiction stating,

while plaintiff brings a claim for breach of contract, the contract in question is actually a tariff that was filed with the Federal Energy Regulatory Commission ("FERC"), and that once a contract is filed with FERC, it becomes "more than a contract between private parties; it is federal law."

*City of Chanute, Kan. v. Kansas Gas & Elec. Co.*, No. 06-4096, 2007 WL 1041763, at *2 (D.

Kan. Apr. 4, 2007). The court reasoned:

In this case, the 1995 contract between the parties was accepted for filing with FERC. However, plaintiff argues that while FERC accepted the 1995 contract, such acceptance does not mean that the contract is FERC-approved when FERC specifically informed defendants that the acceptance for filing "does not constitute approval of any service, rate, charge, classification, or any rule, regulation, contract or practice...." Yet, "the legality of rates so filed is not conditioned upon the Commission's approval. Unless they are challenged ... the filed rates become legal rates." Accordingly, the 1995 contract is the legal rate, which is the equivalent to a federal regulation.

*City of Chanute*, 2007 WL 1041763, at *3 (citing *New York State Gas & Elec.*, 2001 WL

34084006, at *6). Ultimately, the court found:

Under the jurisdictional provision of the FPA, federal courts have exclusive jurisdiction of violations of the FPA or the "rules, regulations and orders thereunder" and of suits to enforce any liability or duty created by the FPA or any "rule, regulation, or order thereunder." Because a tariff filed with a federal agency is the equivalent of a federal regulation, the term "regulation" as provided in the exclusive jurisdiction provision of the FPA "necessarily includes FERC approved tariffs filed by public utilities...." Therefore, "federal courts have exclusive jurisdiction over any claims involving violations of the [filed] tariffs."

*City of Chanute*, 2007 WL 1041763, at *3. Plaintiffs again analogize to *City of Chanute* and

states that the same facts are present in this litigation because:

(1) the dispute centers on how the pricing is formulated under the PSSAs, as environmental costs passed on to the [Plaintiffs] are part of the [Plaintiffs'] rates; (2) the court must construe the terms of the FERC-filed PSSAs to determine what the terms of the parties' agreements were; and (3) the court must construe the terms of the PSSAs to determine whether LaGen was in violation of the PSSAs when it determined that the disputed costs should be part of the rates charged to the [Plaintiffs].

(Doc. 193 at 11.)

Last, Plaintiffs cite *City of Osceola, Ark. v. Entergy Arkansas, Inc.*, 791 F.3d 904, 907–08

(8th Cir. 2015) to support the proposition that FERC "'filed tariffs are the equivalent of a federal

regulation,' and therefore a suit to enforce them arises under federal law." (Doc. 193 at 12

(citing, *City of Osceola, Ark.*, 791 F.3d 904 at 907-908).) The Eighth Circuit explained,

> [t]he contract Osceola seeks to enforce is its Power Coordination, Interchange, and
> Transmission Agreement with Entergy. Under federal law this agreement is
> required to be filed with FERC. 16 U.S.C. § 824d(c). Moreover, FERC has
> determined that all rates and charges set out in the agreement were "just and
> reasonable" as required by federal law. 16 U.S.C. § 824d(a). Any rate or charge not
> determined just and reasonable is unlawful. *Id.* Osceola seeks to enforce the tariff
> contained in the agreement and approved by FERC. Such filed tariffs are "the
> equivalent of a federal regulation," and therefore a suit to enforce them arises under
> federal law. *Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488 (7th Cir.1998).

*City of Osceola, Ark*, 791 F.3d at 907–08. Plaintiffs maintain that this case is analogous and

federal jurisdiction exists. (Doc. 193 at 12.)

Plaintiffs next argue that the Defendant's cited cases are readily distinguishable. First,

Plaintiffs state *Monforte* is inapplicable because the plaintiff did not allege a breach of a FERC

tariff, only a private agreement. (Doc. 193 at 12-13.) Plaintiffs maintain that the argument for

federal jurisdiction in *Monforte* was a federal defense, which does not provide a basis for

removal. (Doc. 193 at 13.) Plaintiffs argue that *Monforte* is therefore distinguishable because the

PSSAs were filed under the FERC tariff and the court in *Monforte* did not address the meaning

of a contract filed with FERC. (Doc. 193 at 13.) Second, Plaintiffs maintain *Florida Gas* is not

applicable because the court found that the agreements existed apart from the filed tariffs, which

they argue is not the case here. (Doc. 193 at 14.) Third, Plaintiffs assert *Pacific Gas* does not

apply because the court relied on the fact that the dispute was between a non-public utility that is

exempt from FERC oversight to support its conclusion that no federal jurisdiction existed. (Doc.

193 at 14.) Plaintiffs point out that Defendant is a public utility and there is no exemption at

issue in this case. (*Id.*) Last, Plaintiffs maintain *Great Lakes Gas Transmission*, is likewise

distinguishable because it differs in material aspects: (1) Although the agreement at issue in *Great Lakes* incorporated the terms of a tariff, the agreement was not filed with FERC; and (2) the claims in *Great Lakes* centered on the interpretation of provisions of the agreement that were unrelated to the FERC tariff and the "FERC approved rate formula." (Doc. 193 at 15.) Because the PSSAs were filed with FERC and the claims challenge the application of the rate formula, Plaintiffs maintain that this case is distinguishable.

Last, Plaintiffs argue that no private right of action is necessary for a claim to "arise under" federal law. (Doc. 193 at 15.) Plaintiffs maintain that the courts in *New York Gas & Elec.*, *City of Chanute*, and *City of Osceola* did not consider whether there was a private right of action to find federal jurisdiction. (*Id.*) Further, Plaintiffs detail that pre-*Gable* case law demonstrates that arising under jurisdiction can be found regardless of whether the *Grable* test is met. (*Id.* (citing *MCI Telecomm. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 388 (8th Cir. 1992) (" Because the service relationship . . . arises under the Communications Act and the tariff required by the Act, we conclude the district court had subject matter jurisdiction over [the] lawsuit under 28 U.S.C. § 1337(a). Thus, the district court did not need to consider whether there is a need for uniform federal common law as a basis for jurisdiction.").)

B. *The Complaint depends on substantial questions of federal law.*

Plaintiffs maintain that the Court has jurisdiction under the *Grable* doctrine because "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." (Doc. 193 at 16 (citing, *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008)).)

First, Plaintiffs argue that resolving federal issues is necessary to the resolution of the state-law claims because a contract filed with FERC has the force and effect of federal law and

therefore the interpretation of those contracts is a federal question. (Doc. 193 at 16-17 (citing *Prairie Horizon Agri-Energy, LLC v. Tallgrass Interstate Gas Transmission, LLC*, No. 14-1236-JTM, 2014 WL 7384767, at *2 (D. Kan. Dec. 29, 2014) ("a claim that involves the validity, construction, or effect of a filed FERC tariff invokes federal subject matter jurisdiction.") (citation omitted); *T & E Pastorino Nursery*, 268 F. Supp. 2d at 1247 ("Because the parties' contractual duties arise under the terms of the . . . tariff, any claim stemming from Defendants' breach of their obligations under the ancillary services contracts is necessarily based on an assumed violation of the tariff itself.")).) Plaintiffs assert that to resolve the claims, the Court must interpret the meaning of the PSSAs as federal law to determine if Defendant improperly implemented a rate formula in a FERC filed contract. (Doc. 193 at 16.)

Plaintiffs also list other federal questions they maintain pervade the case relating to the specific terms of the consent decree entered by the Court and the relevant regulations under the Clean Air Act. (Doc. 193 at 17.) Taken together Plaintiffs maintain that these support the argument that resolution of federal law issues is necessary to the resolution of the Plaintiffs' state law claims. (Doc. 193 at 17.)

Second, Plaintiffs argue that the federal issues are actually disputed because the interpretation of the PSSAs is a matter of federal law. (Doc. 193 at 18.) Plaintiffs therefore reason that because the PSSAs operate with the force of federal law, the dispute as to the meaning of and the implementation of the PSSAs is actually disputed federal law. (*Id.*) In addition, Plaintiffs point to the consent decree and the Clean Air Act regulations as actually disputed federal issues. (Doc. 193 at 18.)

Third, Plaintiffs argue that the federal issues are substantial because the PSSAs have the force and effect of federal law. Plaintiffs detail, "[D]ismissal for lack of subject-matter

jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." (Doc. 193 at 19-20 (citing, *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)) (internal quotation marks omitted)).) Plaintiffs maintain that there is a substantial federal interest in "ensuring [the] calculation of rates, or allocation of costs under rate formulae." This substantial federal interest is evidenced by the exclusive authority to oversee tariffs that is vested in FERC and the ongoing reporting requirements with which Defendant is obliged to comply. (Doc. 193 at 20.) Plaintiffs next argue that the federal issues are substantial because, "[i]f states are permitted to interpret provisions of FERC-filed tariffs and agreements directly related to rates or rate calculations, each state could enforce its own findings as to the meaning of a filed tariff or agreement." (*Id.*) Plaintiffs also assert that a private right of action is not dispositive as to whether there is a substantial federal issue. (Doc. 193 at 21.) Instead, Plaintiffs maintain that a private right of action is merely evidence relative to whether there is a substantial federal issue. (Doc. 193 at 21 (quoting *Grable*, 545 U.S. at 318 ("*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires.")).)

Plaintiffs again cite to the disputes regarding the consent decree, and the Clean Air Act regulations as presenting substantial federal issues. In support, Plaintiffs cite to a pre-*Gable* Fourth Circuit case, *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996), which explained, "resolution of the dispute requires the interpretation and application of the Act to the contractual arrangement between the parties. This is undoubtedly a federal question and, we

believe, sufficiently substantial to justify invocation of federal-question jurisdiction." (Doc. 193 at 21.) Moreover, Plaintiffs maintain that there is a substantial federal issue because of the consent decree negotiated by the EPA that was intended to resolve violations of the federal CAA will necessarily need to be construed because both parties rely on it in support of their case. In a case where the parties disputed dispositive issues as to the requirements of a consent decree, the Sixth Circuit found that there was a substantial federal interest. *United States v. City of Loveland, Ohio*, 621 F.3d 465, 472 (6th Cir. 2010). Plaintiffs argue that because the EPA has entered similar consent decrees with other utility providers, there is a need for uniformity of interpretation of any consent decree provisions. (Doc. 193 at 22.)

Last, Plaintiffs maintain that federal question jurisdiction will not disturb the balance of federal and state judicial responsibilities because FPA issues and FERC-filed tariffs have traditionally been left to the federal courts. (Doc. 193 at 23.) Plaintiffs argue that there would not be a flood of state-based claims if the Court kept jurisdiction because it would only apply to claims arising from contracts filed with FERC under FERC-filed tariffs. (Doc. 193 at 23.) Plaintiffs maintain that federal courts already have jurisdiction over the consent decree and the Clean Air Act regulations so there is no harm in maintaining jurisdiction over the case from that perspective.

C. *The Court should sanction Defendant for filing the Motion to Dismiss*

Plaintiffs argue that under Federal Rule of Civil Procedure 16(f), the Court may sanction Defendant for filing the *Motion to Dismiss* outside of the timeframes set by the scheduling order. (Doc. 193 at 24) (citing *United States v. Ken Mar Associates, Ltd.*, 697 F. Supp. 400, 404 (W.D. Okla. 1987) (sanctioning a plaintiff for moving to dismiss after the dispositive motion deadline because "the circumstances and evidence supporting the . . . Motion to Dismiss [existed] at the time of the [dispositive motion] deadline.")).) Plaintiffs argue all the facts necessary for

Defendant to raise the issue were developed long before the dispositive motions deadline and that the Court should therefore sanction the Defendant. (Doc. 193 at 24.)

3. Defendant's reply

A. *The PSSAs are not subject to arising under federal question jurisdiction based on being filed with FERC.*

In reply, Defendant maintains Plaintiffs concede that there is no private cause of action under the FPA. (Doc. 197 at 1.) Defendant argues that the Court should reject Plaintiffs' argument that "(1) a FERC tariff has the force of federal law; (2) the PSSAs are filed with FERC under [Defendant'] FERC tariff; (3) the PSSAs are thus legally tethered to the tariff; and (4) therefore, a claim for breach of the PSSAs arises under federal law" is superficial and overly-simplistic. (Doc. 197 at 1-2.) Defendant argues that Plaintiffs' logic fails because the LaGen Tariff is a market-based tariff that allows Defendant and its customers the freedom to contract the rates and all other terms and provisions. (Doc. 197 at 2 (citing Doc. 188-3).) The LaGen Tariff is not a cost-based tariff that FERC approves as "just and reasonable." (Doc. 197 at 2.)

Defendant asserts that the filing of the PSSAs does not federalize the PSSAs because (1) FERC considers such filings information; (2) FERC does not examine the service agreement for reasonableness; and (3) FERC's acceptance of the service agreement "does not constitute approval of any service, rate, charge, classification or any rule, regulation, contract or practice affecting such rate or service provided in the filed documents." (Doc. 197 at 2.) As such, Defendant argues that FERC leaves the terms and conditions to the contracting parties and in this case, that contractual language provides that it "shall be governed by the laws of the State of Louisiana." (Doc. 197 at 3, n.5.)  Because the PSSA is filed under a market-based tariff, Defendant maintains that the PSSA does not have the force and effect of federal law and that therefore, arising under jurisdiction is not warranted.

Defendant argues that the *Grable* test is not met because Plaintiffs' analysis—that the FERC filed PSSAs necessarily raise significant and important federal issues of interpretation—fails. Defendant argues that market-based service agreements that are interpreted under state law do not have federal significance.

Defendant reiterates that the cases it originally cited are on point and analogous. Regarding *Monforte*, Defendant states, "Plaintiffs seek to distinguish *Monforte* because the plaintiff did not allege a breach of the FERC tariff, but Plaintiffs also have not alleged a breach of any provision of LaGen's market-based tariff." (Doc. 197 at 4.) Instead, Defendant maintains that Plaintiffs only seek an interpretation of the contracts entered into under the LaGen Tariff. (Doc. 197 at 4, n.6.)  As to *Florida Gas*, Defendant argues,

> Plaintiffs attempt to distinguish *Florida Gas* because the court found that the transportation services agreement "fundamentally defined the parties' respective obligations and that the agreement existed 'apart from the filed tariffs'" [However,] there can be no question that the PSSAs in the present case "fundamentally define" the obligations of Plaintiffs and LaGen, and that they exist "apart from the tariff."

(Doc. 197 at 5.) Regarding *Pacific Gas*, Defendant refutes that the court relied solely on the status of the defendants as exempt from the FPA because the court stated that this exemption was not dispositive. (Doc. 197 at 5.) Last, as to *Great Lakes*, Defendant argues that Plaintiffs' attempt to distinguish *Great Lakes* does not stand because the fact that the agreement was not filed with FERC did not impact the *Grable* analysis. Therefore, Defendant maintains that, like in *Great Lakes*, "Plaintiffs claims involve the interpretation of provisions of the PSSAs that are not dictated by any provision of the FERC tariff and are unrelated to any FERC-approved rate formula or any FERC ruling or order." (Doc. 197 at 6.) Defendant also points the Court to *Newmont Nevada Energy Inv., LLC v. Sierra Pac. Power Co.*, No. 3:12-CV-00349-RCJ, 2012

WL 4339572 (D. Nev. Sept. 20, 2012), which also involved a dispute arising out of a contract entered into by the parties and filed with FERC. (Doc. 197 at 6.) The court explained:

> [Defendant] cannot show that this routine interpretation of contractual terms involves any provisions of the FPA or orders and regulations of the FERC. When contract language "inform[s] the resolution of this matter" rather than the federal tariff itself, there is no federal question jurisdiction.

*Newmont Nevada Energy Inv., LLC v. Sierra Pac. Power Co.*, No. 3:12-CV-00349-RCJ, 2012 WL 4339572, at *6 (D. Nev. Sept. 20, 2012).

Defendant argues that in contrast, Plaintiffs' cases either pre-date *Grable*, do not address *Grable*, fail to recognize the *Grable* factors, or fail to recognize that state law determines the resolution of the matter. (Doc. 197 at 7.) Defendant also asserts:

> Moreover, the critical fact that the PSSAs were filed under LaGen's **market-based tariff** distinguishes this case from all those upon which Plaintiffs rely to support their claim that the PSSAs must be subject to federal jurisdiction. None of those decisions indicate that they involved contracts entered into pursuant to a market-based tariff. Instead, they involved disputes requiring interpretation or application of a FERC Order or Ruling; requiring that the court determine whether the defendants were in violation of a FERC tariff's pricing formulation; requiring that the court interpret and apply a FERC tariff provision requiring that the defendant deliver the least costly mix of electric power; requiring the court to interpret and apply a natural gas quality provision in a FERC tariff; or requiring the court to determine a claim involving a violation of a FERC tariff provision relating to reserve capacity.

(Doc. 197 at 7.) Defendant reasons that, unlike these cases, because the provisions of the market-based tariffs are not at issue, and Plaintiffs' claims do not invoke any provision of the FPA or rely on any FERC finding, order, or ruling, Plaintiffs' state law claims do not invoke a substantial federal question. (Doc. 197 at 7-8.)

Regarding the third factor, whether the federal issues are substantial, Defendant argues Plaintiffs' concern—that "if states are permitted to interpret provisions of FERC-filed tariffs and agreements directly related to rates or rate calculations, each state could enforce its own findings as to the meaning of a filed tariff or agreement"—does not apply because the LaGen Tariff is

market-based. (Doc. 197 at 11.) As such, the terms of sale do not rely on any provisions of the tariff but are reflected in the contract, which is interpreted as a matter of state law. (Doc. 197 at 11.)

      *C.* *The interaction between the PSSAs and federal environmental law is factual and therefore does not satisfy the Grable test*

Defendant argues that Plaintiffs assert a new argument that their breach of contract claim is intertwined with federal environmental law so as to warrant jurisdiction under *Grable.* (Doc. 197 at 8.) However, Defendant asserts that the argument is a red herring because "Plaintiffs are not seeking to enforce the Consent Decree (they cannot because they are not parties to it) and are not bringing an action under [the Clean Air Act regulations] (which would require a Clean Air Act citizen suit complaint)." (Doc. 197 at 8.) Instead, Defendant maintains the Clean Air Act regulations only interact with the Plaintiffs' claims as "factual background for interpretation of the specific language, and if deemed relevant the parties' intent, in the PSSAs." (Doc. 197 at 8.) As such, any interpretation by the court would be strictly factual.

Under the first *Grable* factor, Defendant maintains that federal environmental law does not need to be interpreted to determine if Defendant breached Section 10.4. of the PSSA, which states,

> In no event shall Buyer be required to pay the cost of any activities to remediate any environmental condition in existence at the Plants prior to such change of law or any penalties charges or costs resulting from the breach or violation of any Environmental Law (now existing or hereinafter enacted).

(Doc. 197 at 8.) Defendant argues Plaintiffs do not expressly allege and have not presented evidence through an expert witness or otherwise to show that Defendant violated any Clean Air Act regulation. (Doc. 197 at 9.) Because liability for violating the federal environmental laws is not at issue, Defendant argues any reference to the consent decree of the Clean Air Act regulations will merely be context for the contract interpretation. (Doc. 197 at 9.)  Defendant

points out that, in response to Defendant's motion for summary judgment, Plaintiffs argued "***The crux of the dispute*** in this litigation, therefore, ***is not whether LaGen violated the Prevention of Significant Deterioration ("PSD") provisions***, but rather whether or not it properly characterized the disputes costs as attributable to MATS compliance." (Doc. 197 at 9.)

Further, Defendant states Plaintiffs' reliance on the pre-*Grable* case of *Ormet Corp.* does not advance their argument because, unlike in *Ormet Corp.*, Plaintiffs have not alleged a violation of environmental law and there is no question of Defendant's compliance with the terms and conditions of the consent decree. (Doc. 197 at 10.)

As to the second factor, whether the federal issues are actually disputed, Defendant argues "there are no federal environmental law issues to be resolved because those issues are solely factual background for deciding the true dispute under the PSSAs." (Doc. 197 at 10.) As such, Defendant maintains the only relevant question as to the federal environmental laws or the consent decree is "what effect the Consent Decree, and LaGen's affirmation that some of those technologies that it agreed to install (refueling Unit 2 and PM emission controls) will allow it to comply with MATS, should have on the interpretation of the PSSAs." (Doc. 197 at 11.) This does not rise to an actual dispute. (*Id.*)

Regarding the third factor, whether the federal issues are substantial, Defendant argues

> Whatever position a court takes as to how the cited rules or the Consent Decree affect **the PSSAs**, that position will be relevant only in that limited factual context. Such a determination would not interpret or assess the application of Consent Decree language between the actual parties, and thus can have no impact on future legal interpretations of any other Consent Decrees.

(Doc. 197 at 12.) As such, Defendant maintains *City of Loveland*, does not apply because that case involved the termination of the actual consent decree requirements, which are not at issue in the case. (Doc. 197 at 12-13.) Similarly, Defendant argues that *Herrold* does not apply because

"nothing about the interpretation requested or the relief sought in this case will impact the Consent Decree in any way." (Doc. 197 at 14.)

Last, Defendant reiterates that the federal state balance favors a finding of no jurisdiction because Louisiana and its state courts have a substantial interest in resolving contract disputes under state law. (Doc. 197 at 14.)

>    D.  *Sanctions are not warranted*

Defendant argues that sanctions are not warranted and that Plaintiffs' reliance on *United States v. Ken Mar Associates, Ltd*., 697 F. Supp. 400 (W.D. Okla. 1987) is inappropriate because that case involved a motion to dismiss under sovereign immunity grounds which is a dispositive motion. (Doc. 197 at 14.) Moreover, Defendant urges that Plaintiffs have not shown hardship and that the jurisdictional issues were properly brought before the Court. (Doc. 197 at 15.)

*b.  Law governing*

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute.") (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has stated:

>    For statutory purposes, a case can "aris[e] under" federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted. See *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action"). As a rule of inclusion, this "creation" test admits of only extremely rare exceptions, see, *e.g., Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), and accounts for the vast bulk of suits that arise under federal law, see *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Minton's original patent infringement suit against NASD and NASDAQ, for

example, arose under federal law in this manner because it was authorized by 35 U.S.C. §§ 271, 281.

But even where a claim finds its origins in state rather than federal law—as Minton's legal malpractice claim indisputably does—we have identified a "special and small category" of cases in which arising under jurisdiction still lies. *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first. See 13D C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 3562, pp. 175–176 (3d ed. 2008) (reviewing general confusion on question).

In an effort to bring some order to this unruly doctrine several Terms ago, we condensed our prior cases into the following inquiry: Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? *Grable,* 545 U.S., at 314, 125 S.Ct. 2363. That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *Id.,* at 313–314, 125 S.Ct. 2363.

*Gunn,* 568 U.S. at 257- 258; *see Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) ("A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

Courts apply the *Grable* test to determine if a case is within the "special and small category of cases in which arising under jurisdiction still lies." *Gunn*, 568 U.S. at 257.

Interpreting *Grable* the Fifth Circuit explained:

The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction: "*Franchise Tax Board* ... did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Likewise, "the presence of a disputed federal issue ... [is] never necessarily dispositive." Instead, "[f]ar from creating some kind of automatic

> test, *Franchise Tax Board* thus candidly recognized the need for careful judgments
> about the exercise of federal judicial power in an area of uncertain jurisdiction."

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Merrell Dow Pharms. Inc.*

*v. Thompson*, 478 U.S. 804, 813 (1986) and *Grable*, 545 U.S. at 314). Therefore, when an action

involves a highly fact bound and situation specific inquiry, federal jurisdiction is likely lacking.

*Id.*; *see Baca v. Sabine River Auth.*, No. CV 17-253-BAJ-EWD, 2017 WL 9485534, at *5 (M.D.

La. Oct. 31, 2017), *report and recommendation adopted,* No. CV 17-00253-BAJ-EWD, 2017

WL 5957099 (M.D. La. Nov. 30, 2017); *State v. Astrazeneca AB*, No. CV 15-274-JWD-RLB,

2015 WL 5813342, at *4 (M.D. La. Sept. 14, 2015), *report and recommendation adopted,* No.

15-274-JWD-RLB, 2015 WL 5838487 (M.D. La. Oct. 5, 2015).

*c.  Analysis*

As the Court states in *Gunn*, there are only two ways in which a case can arise under

federal law: (1) ". . . when federal law creates the cause of action asserted" and (2) in that "small

and special category of cases" where "even where the claim finds its origins in state rather than

federal law," there is a federal component in the case substantial enough such that "arising under

jurisdiction still lies." *Gunn*, 568 U.S. at 257- 258 (internal quotations and citations omitted).

Plaintiffs argue first, to use the language of *Gunn*, that "federal law creates the cause of

action" asserted by them. Alternatively, they argue that, even if this dispute "finds its origins in

state rather than federal law" there is federal question jurisdiction under the *Grable* test as

reiterated in *Gunn*. The Court rejects both of these arguments.

1.  Cause of action not created by federal law

The Federal Power Act ("FPA") was enacted "to curb abusive practices of public utility

companies by bringing them under effective control, and to provide effective federal regulation

of the expanding business of transmitting and selling electric power in interstate commerce."

*Gulf States Utilities Co. v. Fed. Power Comm'n*, 411 U.S. 747, 758 (1973). The FPA created

FERC, which is granted broad regulatory power. *Id.* 16 U.S.C. § 824d, Rates and charges;

schedules; suspension of new rates; automatic adjustment clauses, states:

> (a) Just and reasonable rates. All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

16 U.S.C. § 824d(a). The Supreme Court in *Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co.*,

recognized that § 824d(a) did not give rise to an express private cause of action. 341 U.S. 246,

251 (1951) ("[Plaintiff] cannot litigate in a judicial forum its general right to a reasonable rate,

ignoring the qualification that it shall be made specific only by exercise of the Commission's

judgment, in which there is some considerable element of discretion. It can claim no rate as a

legal right that is other than the filed rate, whether fixed or merely accepted by the Commission,

and not even a court can authorize commerce in the commodity on other terms.")

Further, courts have refused to read an implied private cause of action into § 824d(a)

because:

> Sections 205 and 206 of the Federal Power Act, 16 U.S.C. ss 824d & 824e, demonstrates that Congress in 1935 intended to create a fairly common rate-making and regulatory scheme for interstate electricity. Sections 205 and 206 form just a small part of an overall regulatory scheme in which Congress designated the Federal Power Commission (now the Federal Energy Regulatory Commission) as the body to oversee interstate utilities in the public interest. As indicated by the Supreme Court in *Montana-Dakota*, in such a regulatory scheme the Courts have little role to play "except for review of the Commission's orders." 341 U.S. at 252, 71 S.Ct. at 695. This case involves neither the review of a Commission order (such review being available only in the Court of Appeals), nor an action brought by the Commission itself to enforce one of its orders. See 16 U.S.C. ss 825l (b) and 825m.

*City of Gainesville v. Fla. Power & Light Co.*, 488 F. Supp. 1258, 1272 (S.D. Fla. 1980); *see*

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 331 (8th

Cir. 2016) ("Therefore, we find no implied federal cause of action for breach of contract in the

NGA."); *Allco Renewable Energy Ltd. v. Massachusetts Elec. Co.*, 875 F.3d 64, 73 (1st Cir. 2017) ("Moreover, a number of courts have concluded that the NGA does not contain such a right. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329-30 (8th Cir. 2016); *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013); *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1150 (3d Cir. 1977). We agree with them, and thus conclude that the FPA does not provide a private right either.")

No private cause of action is likewise created by 16 U.S.C. § 825p, Jurisdiction of offenses; enforcement of liabilities and duties, which states:

> The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. . . .

16 U.S.C. § 825p. The court in *City of Gainesville* also considered § 825p, finding that the jurisdictional provision: (1) created a cause of action in favor of FERC to prosecute actions in equity; and (2) interpreted the phrase "actions at law" to mean "the explicit private causes of action for damages" enumerated in the FPA. 488 F.Supp. at 1272-74, (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979) ("The source of plaintiffs' rights must be found, if at all, in the substantive provisions of the . . . Act which they seek to enforce, not in the jurisdictional provision.").[3]

---

[3] *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 329 (8th Cir. 2016), construing the jurisdictional grant in the NGA:

> We agree with the district court that federal law does not create an express cause of action under which Great Lakes may sue for breach of contract. The Tariff was filed pursuant to the NGA, and nothing in the NGA expressly creates a cause of action for breach of contract. Although Section 717u of the NGA provides that district courts have "exclusive jurisdiction of violations of [the NGA] or the rules, regulations, and orders thereunder," 15 U.S.C. § 717u, the district court correctly ruled that this provision "does not create a cause of action, but merely states that federal district courts have exclusive jurisdiction over cases that otherwise arise under federal law or involve a substantial

Under the FPA, an electric producer must file its tariff with FERC. 18 C.F.R. § 35.1.

When the parties first contracted in the PSSAs in 2000, the term tariff was defined as, "[A]

compilation in book form of rate schedules of a particular public utility effective under the

Federal Power Act, and a copy of each form of service agreement."[4] 18 CFR 35.2 at n.1 (2000).

Once filed,

> A tariff . . . is the equivalent of a federal regulation, and so a suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law (both types of suit being comprehended in the plaintiff's contract count), arise under federal law. And since the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce. Federal law does not merely create a right; it occupies the whole field, displacing state law.

*Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488–89 (7th Cir. 1998) (internal citations omitted).

Therefore, courts agree that there is federal subject matter jurisdiction in an action to enforce the

terms of a FERC tariff or to determine a "just and reasonable rate." *Ne. Rural Elec. Membership

Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 897 (7th Cir. 2013), *as amended* (Apr. 29,

2013).

As to Plaintiffs' argument, that federal law creates the cause of action asserted by them,

Plaintiffs contend that "the PSSAs are governed by the FPA, are filed with FERC under

[Defendant's] tariff, and are considered federal regulations by operation of law." (Doc. 193 at 8.)

Plaintiffs cite cases in support of their argument. For example, a court in the Southern District of

---

> question of federal law." Indeed, "[e]xclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction." Thus, the NGA does not create an express federal cause of action.

(internal citations omitted).

[4] The PSSAs between the parties were amended in 2011 and 2012 at which point, 18 C.F.R § 35.2(c)(1) defined a tariff as:

> a statement of (1) electric service as defined in paragraph (a) of this section offered on a generally applicable basis, (2) rates and charges for or in connection with that service, and (3) all classifications, practices, rules, or regulations which in any manner affect or relate to the aforementioned service, rates, and charges. This statement shall be in writing. Any oral agreement or understanding forming a part of such statement shall be reduced to writing and made a part thereof. A tariff is designated with a Tariff Volume number.

California found exclusive federal jurisdiction over a breach of an ancillary service contract. The court stated:

> Here, the Federal Power Act's ("FPA") jurisdictional provision provides federal courts "exclusive jurisdiction of violations of [the FPA] or the rules, *regulations,* and orders thereunder." A tariff filed with a federal agency is the equivalent of a federal regulation. Thus, the term "regulation" as provided in Section 825p of the FPA necessarily includes FERC-approved tariffs filed by public utilities such as the [] tariff. As a result, federal courts have exclusive jurisdiction over any claims involving violations of the [] tariffs. Duties arising under the ancillary services contracts are governed by the FERC-approved [] tariff. Because the parties' contractual duties arise under the terms of the [] tariff, any claim stemming from Defendants' breach of their obligations under the ancillary services contracts is necessarily based on an assumed violation of the tariff itself. In this regard, if Defendants' actions violated their obligations under the ancillary services contracts, any claim falls under the imperative of 16 U.S.C. § 825p, which grants the federal courts "exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder ...." In this manner, Plaintiffs' cause of action is plainly premised, in part, on federal law.

*T & E Pastorino Nursery v. Duke Energy Trading & Mktg., L.L.C.*, 268 F. Supp. 2d 1240, 1247 (S.D. Cal. 2003). The Plaintiffs also cite *New York State Gas & Elec.*, in which the Northern District of New York found:

> While these claims appear to be simple state claims on their face, each relate to the rights and duties of each party described in agreements that are incorporated into tariffs filed with FERC. Because these tariffs assume the mantel of federal law by virtue of their filing with FERC, the conclusion that federal subject matter jurisdiction exists and the action was properly removed seems inevitable.

*New York State Gas & Elec.*, 2001 WL 34084006, at *6.

While there is no Fifth Circuit jurisprudence on this question, the Court is persuaded by the rulings from the Seventh and Eighth Circuits, district court rulings, as well as FERC's rulings on jurisdiction, which rejected the same arguments made by Plaintiffs herein.[5] *See Ne. Rural*

---

[5] The Fifth Circuit has explained that "Outside of the bankruptcy context, the FPA does not provide FERC with exclusive jurisdiction over the breach of a FERC approved contract. While the FPA does preempt breach of contract claims that challenge a filed rate, district courts are permitted to grant relief in situations where the breach of contract claim is based upon another rationale." *In re Mirant Corp.*, 378 F.3d 511, 519 (5th Cir. 2004).

*Elec. Membership Corp.*, 707 F.3d 883, at 896-897; *Great Lakes Gas Transmission Ltd. P'ship v.*

*Essar Steel Minnesota LLC*, 843 F.3d 325, 332 (8th Cir. 2016); *Clarksdale Pub. Utilities*

*Comm'n v. Entergy Services Inc.*, 93 FERC ¶ 61002, 61005–06 (Oct. 2, 2000); *Fla. Gas*

*Transmission Co., LLC v. Bay Gas Storage Co.*, No. CIV.A. H-08-3472, 2009 WL 361592, at *3

(S.D. Tex. Feb. 11, 2009).

For example, a court in the Eastern District of California found that a service agreement

does not create a federal question created by federal law, explaining:

> Rather, this is a purely state based contract action implicating certain language
> contained in a federal tariff. Plaintiffs seek to persuade the Court that this chiefly
> federal issue is merely played out against the backdrop of a state law contract claim.
> Defendants, predictably, claim the federal tariffs, while admittedly crafted pursuant
> to federal law, play but a bit role in an entirely state law contract action. In fact, this
> case poses the "litigation-provoking problem" of a federal issue embedded in a
> state-created cause of action. More precisely, the question before this Court is
> whether the incorporation by reference of federal regulations into a purely state law
> contract is sufficient to confer federal subject matter jurisdiction.

*Pacific Gas & Elec. Co. v. Arizona Elec. Power Coop., Inc.*, 479 F. Supp. 2d 1113, 1121 (E.D.

Cal. 2007).[6]

The Seventh Circuit distinguished when a breach of contract action under a federally

filed tariff arises under federal law, reasoning,

> [Defendant] rests this argument on our previous decision holding that a state law
> action seeking to enforce or challenge terms of a federally-filed tariff arises under
> federal law. The reason behind this is straightforward. Tariffs filed with
> federal agencies are the equivalent of federal regulations issued by the agency. Any
> liability the plaintiff seeks to enforce necessarily arises under federal law because
> federal law created the liability. If [Plaintiff's] suit sought to challenge a filed tariff,

---

[6] In 2000, when the parties first contracted for the PSSAs, the regulations did not define service agreement. The
regulations in effect when the PSSAs were amended in 2011 and 2012, defines a service agreement as:

> an agreement that authorizes a customer to take electric service under the terms of a tariff. A service
> agreement shall be in writing. Any oral agreement or understanding forming a part of such statement
> shall be reduced to writing and made a part thereof. A service agreement is designated with a Service
> Agreement number.

18. U.S.C. § 35.2(c)(2).

the same reasoning would support jurisdiction under section 825p because it would be seeking to challenge the tariff—a regulation issued under the Federal Power Act.

*Ne. Rural Elec. Membership Corp.*, 707 F.3d at 896. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 331 (8th Cir. 2016) ("... this claim was not brought to enforce the terms of a tariff as previously interpreted by FERC. This dispute did not "center[ ] on" an interpretation of a "FERC approved rate formula," nor did the FAC seek "damages permissible under" the NGA or FERC decisions. See id. Rather, the FAC alleged a simple breach of contract claim. There was no indication that federal law created this cause of action or played any role in Great Lakes's right to relief.")

In addition, the Seventh Circuit also recognized that FERC routinely declines to exercise jurisdiction over state-law contract claims, stating:

> FERC itself recognizes a role for state contract law in adjudicating contract disputes involving federal tariffs. See *Portland General Electric Co.,* 72 FERC ¶ 61009, at *3 (July 5, 1995) ("our jurisdiction to settle disputes over the meaning of rate schedules does not as a matter of law preclude state courts from entertaining contract litigation...."); *Arkansas Louisiana Gas Co. v. Hall,* 7 FERC ¶ 61175, at *3 (May 18, 1979) (discussing when FERC will exercise primary jurisdiction over contract disputes that would otherwise be subject to state court jurisdiction); see also *PPL Montana, LLC,* 96 FERC ¶ 61313 (Sept. 14, 2001) (deferring to state courts to resolve power contract disputes). If the Federal Power Act completely preempted state law causes of action, we would not expect FERC—the agency that administers the statute—to recognize any role for state court adjudication of contract disputes involving filed tariffs.

*Ne. Rural Elec. Membership Corp.*, 707 F.3d at 896-897. In addition, where the tariff is market-based, and therefore all rates are set by contract between the parties, FERC routinely expresses that market-based rate disputes are contractual disputes not appropriate for the regulatory commission to respond to. FERC has explained:

> The Commission has a longstanding policy of minimizing involvement in agreements with market-based rates. As a consequence, we have long held that disputes over a contract for the sale of electric energy at negotiated, market-based rates are more appropriately resolved in state courts or arbitration.

35

*Clarksdale Pub. Utilities Comm'n*, 93 FERC ¶ 61002, 61005–06 (Oct. 2, 2000).[7]

The Court agrees that tariffs have the force of federal law; however, the Court does not find that federal law "creates the cause of action asserted" because the PSSAs between the parties "exist[] apart from the filed tariffs and the [contract] fundamentally defines the parties' respective obligations" and the Plaintiffs' claim does not challenge the reasonableness of a federal law, regulation, or tariff. *Fla. Gas*, 2009 WL 361592, at *4; *see Newmont Nevada Energy Inv., LLC v. Sierra Pac. Power Co.*, No. 3:12-CV-00349-RCJ-VPC, 2012 WL 4339572, at *6 (D. Nev. Sept. 20, 2012) ("When contract language 'inform[s] the resolution of this matter' rather than the federal tariff itself, there is no federal question jurisdiction.") (citing, *Pacific Gas and Elec. Co. v. Ariz. Elec. Power Coop ., Inc.,* 479 F.Supp.2d 1113, 1125 (E.D.Cal.2007)).

In this case, the PSSAs were filed under the LaGen Tariff, which in relevant part states:

. . . 3. Rates: All sales shall be made at rates established by agreement between the purchaser and Seller.

4. Other Terms and Conditions: All other terms and conditions shall be established by agreement between the purchaser and Seller. . . .

(Doc. 188-5 at 4.) Therefore, as a market-based tariff, the LaGen Tariff acknowledges that the parties have freedom of contract to set the rates and terms of their obligations. The PSSAs, while created under the LaGen Tariff, exist apart from the LaGen Tariff and the PSSAs define the parties' obligations. Moreover, Plaintiffs do not challenge any provision of the LaGen Tariff or allege that Defendant breached the terms of the LaGen Tariff. Instead, Plaintiffs challenge whether LaGen breached its contractual obligation in the PSSAs. In resolving the breach of

---

[7] *See Dartmouth Power Assocs. Ltd. P'ship*, 73 FERC ¶ 61096, 61309 (Oct. 18, 1995) ("The Agreement is for the sale of electric energy at negotiated, market-based rates. The Agreement was expressly filed with the Commission on this basis and was expressly accepted by the Commission on this basis. Now, a dispute has arisen as to the proper calculation of the rates and billings under the Agreement. Where parties have negotiated the terms of their power sales agreement in a competitive environment and the agreement has been accepted by the Commission on a market basis, the Commission's policy has been to minimize its involvement in such negotiated arrangements. We see no compelling reason to make an exception in the present dispute. Therefore, we will dismiss the complaints in this case.")

contract claim, a court will have to consider the context of LaGen Tariff, which has the force of a federal regulation. But it does not follow that consideration of the LaGen Tariff for this purpose means that the Plaintiffs' claim for breach of the PSSAs arise under federal law. *See Monforte Expl. LLC v. ANR Pipeline Co.*, No. 09-3395, 2010 WL 143712, at *4 (S.D. Tex. Jan. 7, 2010) ("Since resolving the breach of contract claim will likely require an analysis of the validity and enforceability of the OFO under the FERC tariff, a court addressing this dispute will have to consider federal law. This does not mean, however, that [Plaintiff's] claim arises under federal law."); *see also Michigan Elec. Transmission Co. v. Consumers Energy Co.*, No. 1:17-CV-259, 2018 WL 3146728, at *7 (W.D. Mich. Jan. 29, 2018) ("In short, the Court concludes that the fact that the parties' FERC-filed Agreements have the force of a federal regulation does not compel the conclusion that METC's state-law claims necessarily raise a federal issue, actually disputed and substantial.").

In conclusion, the Court concludes that there is not a federal law which creates, expressly or impliedly a cause of action under which this case arises. This brings the Court to Plaintiff's alternative argument, i.e. that even if this case arises under state law, there is a federal component in the case substantial enough that arising under jurisdiction still lies.

2. Substantial question of federal law under the Grable test

Under *Grable*, courts have declined to find federal question jurisdiction over the state law claims involving a power service agreement. *Great Lakes*, 843 F.3d at 334; *see Crosstex LIG, LLC v. BG Energy Merchants, LLC*, No. 3:11-CV-1259-B, 2011 WL 4368002, at *2 (N.D. Tex. Sept. 16, 2011) (reasoning that where the terms of the tariff did not impact the resolution of the case there is no federal question jurisdiction over a breach of contract case involving a service agreement under the NGA); and *Michigan Elec. Transmission Co. v. Consumers Energy Co.*, No. 1:17-CV-259, 2018 WL 3146728, at *7 (W.D. Mich. Jan. 29, 2018); *see also Enable*

*Mississippi River Transmission*, 844 F.3d at 499 (holding under the NGA that "[b]ecause no element of a Louisiana civilian conversion claim requires the resolution of a federal law issue, there is no federal question jurisdiction over this suit.").

Under the first and second prongs, whether a federal issue is necessarily raised and actually disputed, courts examining a breach of contract claim have gone both ways. For example, as cited by Defendant, in *Monforte Expl. L.L.C. v. ANR Pipeline Co.*, the Southern District of Texas explained:

> Since Monforte's petition only seeks relief for a breach of the Interconnect Agreement under state law, the court concludes that it does not on its face raise a federal question. Nor does the petition state "a federal issue, actually disputed and substantial," such that the state law claim would be removable to federal court. *See Grable,* 125 S.Ct. at 2368. While federal law may well be relevant in resolving the state law claim in this action, a Texas state court is competent to apply federal law.

No. 09-3395, 2010 WL 143712, at *4 (S.D. Tex. Jan. 7, 2010); On the other hand, the Eighth Circuit acknowledged that a federal issue may necessarily be raised and actually disputed by a power service agreement under a federal tariff. *Great Lakes*, 843 F.3d at 332.

Under the first prong, Plaintiffs argue that by virtue of the PSSAs being filed with FERC a federal issue is necessarily raised. The Court disagrees. As the court in *Pacific Gas* stated:

> [t]he Plaintiffs are seeking to enforce a private contract between private parties which will afford relief only if the contract terms, from wherever drawn, are found to have been breached . . . it is not the federal tariff itself, standing as the law, that will give life to the merits of Plaintiffs' claim. It is the contract language, standing only as a representation of the agreement between the Parties, that will inform the resolution of this matter. . . . On that same note, this is not a suit alleging violations of the FPA itself or of any rule or regulation thereunder. Instead, this is a suit to enforce a contract between private parties that has merely incorporated by reference terms that are contained in a federal regulation.

479 F. Supp. 2d at 1125-26; *see Enable Mississippi River Transmission,* , 844 F.3d at 499 (holding under the NGA that "[b]ecause no element of a Louisiana civilian conversion claim requires the resolution of a federal law issue, there is no federal question jurisdiction over this

suit."). This case involves a contract between two parties formed under the terms of a federal tariff. However, the federal tariff does not give life to the Plaintiffs' claims because Plaintiffs claims are limited to the interpretation of Section 10.4 of the PSSAs. There is no element of a breach of contract claim under Louisiana law that requires the resolution of a federal law issue. Therefore, this dispute does not necessarily raise a federal issue.

Under the second prong, whether the federal issue is actually disputed, the Court is also unpersuaded by Plaintiffs arguments. Again, Plaintiffs argue that by virtue of filing the PSSAs with FERC, a breach of contract claim presents an actually disputed federal issue. However, as Defendant points out, determining whether Section 10.4 of the PSSAs was breached does not implicate any terms of the LaGen Tariff and there are no allegations that the LaGen Tariff was not "just and reasonable."

Plaintiffs' arguments regarding the Consent Decree, and the Clean Air Act regulations are also unpersuasive. First, Plaintiffs' reliance on cases decided prior to *Grable* are unavailing. For example, in *Ormet Corp.* the court found federal question jurisdiction in a case where the claims were for violations of federal environmental law and the terms of a prior consent decree. Plaintiffs in this case are not parties to the Consent Decree. There are no allegations that the Consent Decree or federal environmental law has been violated. Instead, the Clean Air Act regulations and the Consent Decree are fact-specific frameworks that are implicated by breach of contract arguments. Because neither the federal energy regulatory framework of the LaGen Tariff nor the fact-specific framework of federal environmental law is actually disputed, the Court finds that the federal issue is not actually disputed.

Under the third prong, the Supreme Court in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–701 (2006), recognized that substantial issues of federal law are

raised when there is a "nearly pure issue of law" that "could be settled once and for all and thereafter would govern" the area of federal law. *Id.* at 701. The Supreme Court reasoned that when a case is "fact-bound and situation-specific" the case does not present a substantial issue of federal law. As Magistrate Judge Bourgeois explained:

> The Supreme Court has not provided an exhaustive list of factors for determining whether a federal issue is substantial. The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 814 n. 12 (1986). The Eastern District of Louisiana has looked to the following factors in determining whether the substantiality requirement of the *Grable* four-part inquiry is satisfied: (1) the importance of the federal questions at stake; (2) whether the resolution of the federal questions affects only the parties; (3) whether there is an express challenge or a specific action of a federal agency or a collateral attack on a regulatory scheme; and (4) whether nearly pure issues of law are at issue. *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Authority–East v. Tennessee Gas Pipeline Co., LLC,* 29 F.Supp.3d 808, 859–63 (E.D.La.2014) (finding federal question jurisdiction over removed state court action where state flood control agency alleged that oil and gas operations of 92 companies caused erosion of coastal lands that resulted in increased flood risks from storm surges).

*State v. Astrazeneca AB*, No. 15-274-JWD-RLB, 2015 WL 5813342, at *4 (M.D. La. Sept. 14, 2015), *report and recommendation adopted,* No. 15-274-JWD-RLB, 2015 WL 5838487 (M.D. La. Oct. 5, 2015).

Applying the third prong to PSSAs under the FPA, courts have found that the federal issue is not substantial when the agreement is (1) fact-specific to the parties; (2) interpreted under state law; and (3) does not otherwise challenge the terms of the tariff or the FPA. The Eighth Circuit explained:

> there is little national interest in having a federal court interpret tariff provisions if it will merely apply state law [because] [a]ny interpretation by a federal court of the language of the tariffs will only speak to how those tariffs should be construed in this state. Accordingly, the reach of any such adjudication will not have federal reverberation. In addition, to the extent federal interests are implicated, the state court is quite competent to apply the language of the tariffs and is certainly well positioned to do so where, as here, the tariff language is to be construed in accord with state law.

*Great Lakes*, 843 F.3d at 332–33 (quoting *Pacific Gas*, 479 F.Supp.2d at 1123 (E.D. Cal. 2007);

*Michigan Elec. Transmission Co. v. Consumers Energy Co.*, No. 1:17-CV-259, 2018 WL

3146728, at *6 (W.D. Mich. Jan. 29, 2018) ("Hence, even assuming arguendo that METC's

state-law claims necessarily give rise to a disputed federal issue based on the force of their

Agreements, the federal issue is not substantial.").

The Court is persuaded by the reasoning of the Eighth Circuit. In this case, the federal

issue is not substantial because: (1) the PSSAs are by agreement to be construed under Louisiana

state law, which minimizes the importance of the federal issue at stake as any interpretation will

not have an impact outside of the state; (2) the issues are fact specific to the parties in this case

and therefore affect only the parties; and (3) there is not an express or implied challenge of a

specific federal agency action as the Plaintiffs do not challenge the terms of the LaGen Tariff and

the federal environmental laws are merely a fact-specific framework; and (4) there is not a pure

issue of law at stake.

Under the fourth prong, the Eighth Circuit likewise explained how mandating federal

jurisdiction would disturb the federal-state balance approved by Congress, explaining:

> First, the combination of no federal cause of action and no preemption of state
> remedies serves as an important clue suggesting a congressionally approved
> balance *disfavoring* federal involvement. Second, the presence of the exclusive
> jurisdiction provision indicates that Congress did *not* intend this particular type of
> case to end up in federal court, because exclusive jurisdiction over breach of
> contract cases would result in the very disturbance that *Grable* warned against.
> Specifically, exclusive federal jurisdiction over these cases would preclude state
> courts from adjudicating contract disputes governed by their own state law. As the
> Supreme Court has emphasized, when a statute mandates, rather than permits,
> federal jurisdiction—thus depriving state courts of all ability to adjudicate certain
> claims—our reluctance to endorse broad readings, if anything, grows stronger. Our
> reluctance is especially heightened in this case because the interpretation of a
> contract is ordinarily a matter of state law to which we defer.

*Great Lakes*, 843 F.3d at 334 (internal quotations and citations omitted.)

Again, the Court agrees with the reasoning of the Eighth Circuit. In this case, under the fourth prong, the Court finds that it is not capable of resolving the case in federal court without disrupting the federal-state balance approved by Congress. This is a breach of contract claim brought under state law, and therefore interests of comity dictate that state courts have a strong incentive in interpreting and enforcing the law of contracts in their state. While the state courts may have to reference federal law, including the federal environmental framework within which the dispute arose and the federal Consent Decree, the state courts are competent and able to do so.

The Plaintiffs' claims do not arise under federal law and do not present a federal issue that is necessarily raised, actually disputed, and substantial and which will not disrupt the federal-state court balance envisioned by Congress; therefore, the Court finds there is no federal question jurisdiction in this case. The Court likewise denies Plaintiffs request for sanctions.

<u>CONCLUSION</u>

**IT IS ORDERED that** the Defendant's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Doc. 183) is **GRANTED;**

**IT IS FURTHER ORDERED** that the case is **DISMISSED**; and

**IT IS FURTHER ORDERED** that all pending motions are therefore **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on February 18, 20202.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**